No. 22-3331

# In the United States Court of Appeals for the Third Circuit

---

SPS CORP I – FUNDO DE INVESTIMENTO EM DIREITOS
CREDITÓRIOS NÃO PADRONIZADOS,
Applicant-Appellant

*v.*

GENERAL MOTORS COMPANY,
Respondent-Appellee

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
NO. 1:21-MC-00565-CFC (CONNOLLY, J.)*

---

**BRIEF OF APPELLEE GENERAL MOTORS COMPANY**

---

LEWIS R. CLAYTON
DARREN W. JOHNSON
AMITAV CHAKRABORTY
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000

DANIEL A. MASON
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
500 Delaware Avenue, Suite 200
Post Office Box 32
Wilmington, DE 19899
Tel: (302) 655-4410

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Appellee General Motors Company respectfully submits that it is a public corporation organized and existing under the laws of Delaware.  General Motors Company has no parent corporation. No publicly held corporation owns 10% or more of General Motor Company's stock.

# TABLE OF CONTENTS

**Page**

Statement of the Issues ............................................................................... 1

Statement of Related Cases and Proceedings ............................................ 1

Statement of the Case .................................................................................. 1

    A.      Factual Background ............................................................ 5

    B.      The Brazilian Litigation ................................................... 8

    C.      The Brazilian Discovery Proceeding ............................. 10

    D.      The District Court's Order Denying the Section 1782 Application ....................................................................... 13

    E.      Following the District Court's Order—in a Ruling that the District Court Could Not and Did Not Consider—the Brazilian Court Rules Against SPS in the Brazilian Discovery Proceeding ............... 14

    F.      The District Court Denies Appellant's Motion for Reconsideration ............................................................... 16

Standard of Review ................................................................................... 17

Summary of Argument .............................................................................. 17

Argument .................................................................................................... 22

I.   The District Court Appropriately Exercised its Discretion in Ruling That the *Intel* Factors Weigh Against the Application. ......................... 24

    A.      The District Court Correctly Held That the First *Intel* Factor Weighs in Favor of Appellee ............................. 25

    B.      The District Court Correctly Held That the Second *Intel* Factor Weighs in Favor of Appellee ............................. 30

    C.      The District Court Did Not Err or Abuse Its Discretion in Finding the Third *Intel* Factor "Neutral" ........................ 33

    D.      Appellant Cannot and Does Not Appeal the District Court's Holding That the Fourth *Intel* Factor Favored Appellant .................. 36

    E.      The District Court Did Not Commit Reversible Error in Observing That Granting the Application Would Disserve the Aims Underlying Section 1782 ....................................................... 37

II.  Appellant Has Waived Any Challenge to the District Court's Denial of Its
     Motion for Reconsideration ............................................................. 38

III. The Order Also Should Be Affirmed Because the Application Does Not
     Meet the Requirements of Section 1782 or Comport with the Federal
     Rules ................................................................................................ 39

     A.    The Application Fails to Satisfy Section 1782's Requirements
           Because GM Brazil, the True Target of the Application, Is Not
           Found in the District of Delaware ....................................... 40

     B.    The Application Fails to Satisfy Section 1782's Requirements
           Because Appellant Has Not Shown that the Requested
           Information Is "For Use" in a Foreign Proceeding within
           Reasonable Contemplation ................................................... 42

     C.    The Federal Rules Do Not Permit the  Broad Discovery Appellant
           Is Seeking ............................................................................ 43

Conclusion ................................................................................................ 45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Abud Valech*,
  No. 1:20-MC-23408-WPD, 2020 WL 8919124 (S.D. Fla. Dec. 31,
  2020) ...................................................................................................32

*United States* v. *Albertson*,
  645 F.3d 191 (3d Cir. 2011) .................................................................38

*In re Ex Parte Application of Eni S.p.A.*,
  2021 WL 1063390 (D. Del. Mar. 19, 2021) .........................................35

*In re Application of Godfrey*,
  526 F. Supp. 2d 417 (S.D.N.Y. 2007) ..................................................41

*In re Atvos Agroindustrial Investimentos S.A.*,
  481 F. Supp. 3d 166 (S.D.N.Y. 2020) ..................................................35

*In re Babcock Borsig AG*,
  583 F. Supp. 2d 233 (D. Mass. 2008)...................................................31

*Bayer AG* v. *Betachem, Inc.*,
  173 F.3d 188 (3d Cir. 1999) ...........................................................22, 43

*In re Biomet Orthopaedics Switzerland GmBh*,
  742 F. App'x 690 (3d Cir. 2018) ....................................................14, 16

*In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by
  Affiliates of Fortress Inv. Group LLC*,
  No. 14-cv-1801 (NRB), 2014 WL 3404955 (S.D.N.Y. July 9,
  2014) ...................................................................................................24

*Comision Ejecutiva Hidroelectrica del Rio Lempa* v. *Nejapa Power
  Co. LLC*,
  341 F. App'x 821 (3d Cir. 2009) ..........................................................22

*Davies* v. *First Reliance Standard Life Ins. Co.*,
  713 F. App'x 129 (3d Cir. 2017) ..........................................................17

*In re Fischer Adv. Composite Components AG*,
   No. C08-1512 (RSM), 2008 WL 5210839 (W.D. Wa. 2008) ...........................29

*Fuhr* v. *Deutsche Bank, AG*,
   615 F. App'x 699 (2d Cir. 2015) ...............................................................29

*In re Ex Parte Glob. Energy Horizons Corp.*,
   647 F. App'x 83 (3d Cir. 2016) ............................................................17, 18, 26

*GmbH* v. *Robert Bosch LLC*,
   294 F. Supp. 3d 721 (E.D. Mich. 2018) .....................................................31, 32

*Grant* v. *Saul*,
   No. CV 19-2555, 2020 WL 977323 (E.D. Pa. Feb. 28, 2020) ...........................38

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).........................................................................1, 22, 23, 31

*In re IPC Do Nordeste*,
   No. 12-50624, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) .......................42

*In re JSC United Chemical Co. Uralchem*,
   No. 20-3651, 2020 WL 4251476 (D.N.J. July 24, 2020) .................................42

*United States* v. *Kalb*,
   891 F.3d 455 (3d Cir. 2018) .........................................................................17

*Kestrel Coal Pty. Ltd.* v. *Joy Global, Inc.*,
   362 F.3d 401 (7th Cir. 2004) .......................................................................40

*In re Kreke Immobilien KG*,
   No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8,
   2013) ........................................................................................................29

*Matter of Wei for Ord. Seeking Discovery Under 28 U.S.C. § 1782*,
   No. 18-MC-117-RGA, 2018 WL 5268125  (D. Del. Oct. 23, 2018) .................43

*In re Microsoft Corp.*,
   428 F. Supp. 2d 188 (S.D.N.Y. 2006) ............................................................29

*Pinchuk* v. *Chemstar Prod. LLC*,
   No. 13-MC-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014)............35, 41

*Saint-Gobain Adfors S.A.S. v. 3M Co.*,
   No. 020MC00052MJDKMM, 2020 WL 6111632 (D. Minn. Oct.
   16, 2020) ................................................................................................32

*United States* v. *Tomko*,
   562 F.3d 558 (3d Cir. 2009) ................................................................17

*In re Venequip, S.A.*,
   No. MC 21-2090, 2022 WL 834780 (E.D. La. Mar. 21, 2022) .........35

**Statutes**

28 U.S.C. § 1782 .............................................................................*passim*

**Other Authorities**

Rule 23(b)(2)(C) .................................................................................40

Rule 26(b)(2)(C) .................................................................................43

Rule 30(b)(6) ......................................................................................44

Rule 45 ...........................................................................................40, 43

## STATEMENT OF THE ISSUES

Whether the district court abused its discretion in denying the Section 1782 application (the "Application") of Appellant SPS Corp I – Fundo de Investimento em Direitos Creditórios Não Padronizados ("SPS" or "Appellant") after weighing the discretionary factors set forth in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

General Motors Company is unaware of any related cases pending before this Court.

## STATEMENT OF THE CASE

SPS's Application sought to compel General Motors Company ("GM" or "Appellee") to produce discovery materials in the possession of GM's Brazilian wholly owned subsidiary ("GM Brazil") even as SPS sought the same information in a Brazilian court and although, based on repeated rulings of Brazilian courts, SPS lacks standing to bring a merits proceeding in Brazil.  Rather than adhering to Brazilian procedure, "SPS made a ***tactical*** decision to file . . . its § 1782 application during the pendency of the [Brazilian] discovery proceedings," thereby "bring[ing] parallel proceedings in a foreign court and a federal district court for ***the same discovery***."  (App015-16 (emphases added).)

1

SPS presents no evidence or argument to discharge its demanding burden to show that the district court's careful application of the discretionary *Intel* factors amounted to an abuse of discretion. To the contrary, we submit that overturning the district court's order would encourage misuse of Section 1782 to harass United States companies that have foreign subsidiaries, affiliates or parents with duplicative, premature and burdensome discovery demands.

The district court found that the first and second *Intel* factors favored GM; the third factor was neutral; and the fourth factor favored SPS. Weighing these factors in their totality, it denied the Application. SPS provides no basis for this Court to reverse that ruling and grant the Application (which, as discussed below, fails even to satisfy the basic statutory requirements of Section 1782).

First *Intel* Factor: The district court properly determined that the first *Intel* factor (availability of the evidence at issue in a foreign proceeding) favors GM because the evidence SPS seeks is in the possession of GM Brazil and thus may be obtained without a Section 1782 discovery request. (App010-11.) SPS sought essentially the same evidence from GM Brazil in Brazil and from GM in the United States through its Application, and the same discovery sought here is indisputably within the reach of the Brazilian courts. Indeed, a declaration accompanying SPS's Application stated that the information SPS seeks "can *only* be provided by [GM Brazil] itself or by its auditors" (App074 (emphasis added)), and its memorandum

of law asserted that "*all* financial information concerning the IPI tax refunds or credits is *solely* in the possession of GM Brazil and its financial professionals" (App029 (emphases added)).

Second *Intel* Factor:  The district court correctly found that the second *Intel* factor—which looks at the nature of the foreign tribunal and its receptivity to the discovery sought—also favors GM.  SPS's claim that Brazilian courts would be receptive to the discovery it seeks completely ignores, among other factors, four separate Brazilian court rulings directly on point confirming that SPS lacks standing to file a merits proceeding in Brazil in which the evidence might be used.

Third *Intel* Factor:  The district court found that the third *Intel* factor—whether SPS is attempting to circumvent foreign proof-gathering restrictions—was "neutral, at least for now."  (App011-12.)  SPS's contention that the district court found this factor "weigh[ed] against SPS" (Br. 32) is thus plainly incorrect.

Fourth *Intel* Factor:  The district court "assumed *without deciding*" that the fourth *Intel* factor (whether the request is unduly intrusive or burdensome) favored SPS—notwithstanding that "[s]ome of SPS's document requests seek information *far beyond the scope* of this narrow dispute about tax overpayments"—on the ground that the district court might be able to narrow the subpoenas and reduce their manifest burden.  (App012 (emphases added).)

3

SPS provides no legitimate reason to disturb the district court's weighing of these factors.

Shortly after the district court's decision, the Brazilian court issued a decision (the "Brazilian Judgment") denying SPS's attempt to obtain pre-litigation discovery from GM Brazil. SPS then moved for reconsideration of the district court's Order, arguing that the Brazilian Judgment was "newly discovered evidence" that should retroactively alter the district court's Order. In a November 7, 2022 Memorandum Order (the "Reconsideration Order"), the district court correctly rejected that argument, finding that an opinion issued after its Order could not be deemed "newly discovered evidence," because it did not exist when the Order was issued. The district court made the further finding that "SPS made a ***tactical*** decision to file . . . its § 1782 application during the pendency of the Sao Paulo court discovery proceedings," thereby choosing to "bring parallel proceedings in a foreign court and a federal district court for ***the same discovery***." (App015-16 (emphases added).) SPS does not argue anywhere in its appeal brief that the district court erred in denying reconsideration, and has therefore waived any such contention and any attempt to rely upon the Brazilian Judgment on appeal. The Brazilian Judgment therefore should not be considered in this appeal.

If this Court were to consider the Brazilian Judgment (and we submit it should not), it would only further support the district court's Order. The Brazilian Judgment

confirms that the discovery SPS seeks is available in Brazil and may be pursued in a future merits proceeding in Brazil, if SPS were ever to obtain standing to initiate any such proceeding.  And the Brazilian Judgment makes clear that granting SPS's Application would circumvent Brazilian proof-gathering restrictions at this pre-litigation stage.

Beyond SPS's failure to show that the district court abused its discretion, the Order should be affirmed on two additional, independent bases that the district court did not reach.  *First*, SPS fails to satisfy the Section 1782 statutory requirements because (1) the true target of the Application is GM Brazil, which neither resides nor is found in the District of Delaware, and (2) SPS has not met its burden to show that the requested information is "for use" in any foreign proceeding that is within reasonable contemplation, given that SPS lacks and may never obtain standing to sue.  *Second*, SPS's Application fails to comport with the Federal Rules of Civil Procedure because the discovery it seeks is wasteful, burdensome and unnecessary, and concededly can be obtained from another source—GM Brazil.

For the reasons set forth below, GM respectfully submits that the Order should be affirmed.

### A.    Factual Background

The Application concerns certain payments made by GM Brazil relating to the Imposto sobre Produtos Industrializados ("IPI"), a Brazilian federal tax imposed

on automobiles.  As an automobile manufacturer, GM Brazil is required to pay the IPI, the cost of which is then passed on to car dealerships.  (App219-20.)  In 1989, the price used to calculate the tax was changed from the sticker price to the actual price charged.  (*Id.*)  GM Brazil nevertheless continued to pay tax based on the higher sticker price from June 1, 1990 to July 31, 1991.  (*Id*.)

With the authorization of the dealerships—including the subset of dealerships who later assigned their rights to SPS—GM Brazil brought suit against the Brazilian government to recover these overpayments.  (App006.)  The actions lasted from 1995 to 2017 and ended with the Brazilian courts recognizing GM Brazil's right to the return of the overpayments plus interest.  (App220.)

After obtaining such a decision, taxpayers are required by Brazilian law to file a proof of claim with the Brazilian Federal Revenue Office (the Receita Federal do Brasil, or "RFB"), Brazil's equivalent of the IRS.  (*Id*.)  GM Brazil prepared and submitted to the RFB its proof of claim and also retained an independent auditor, KPMG, to prepare a spreadsheet submitted therewith that included the calculations of the total tax credit, as well as the specific credit owed to each dealership.  (*Id*.)

SPS incorrectly asserts that GM Brazil "refused to provide" documents that would enable SPS to "assess the scope and timing of any payment obligation GM Brazil owes."  (Br. 10-11.)  To the contrary, GM Brazil provided the KPMG spreadsheet to SPS, which identifies the specific tax credits sought with respect to

each and every GM dealership in Brazil, including those who assigned their rights to SPS. (App220-21.) GM Brazil also provided SPS copies of the papers submitted in the underlying proceedings filed against the Brazilian government relating to the IPI tax payments. (*Id*.) These materials are more than sufficient to allow SPS to determine the amount of the credits at issue. (*Id*.)

Upon receiving a proof of claim request, the RFB has at least five years to examine the existence and sufficiency of the tax credit amount claimed. (*Id*.) Only when the RFB has done so and ratified the amount claimed is the amount of the credit final. (*Id*.) Thus, the amount of the refund is still uncertain and GM Brazil's duty to transfer the tax credits to the dealerships has not yet arisen and will not arise until (i) the RFB ratifies the amount in the proof of claim or (ii) the five-year examination period expires. (*Id*.)

As a result, contrary to the unsupported assertion in SPS's appeal brief, SPS has no current right of payment—nor, as consequence, any basis to commence (or to reasonably anticipate potentially commencing) any litigation against GM Brazil relating thereto. As addressed below, the Brazilian courts have confirmed that no standing exists that might permit the initiation of any such litigation. The RFB has not yet ratified the proof of claim request, and the five-year period will not expire until July 30, 2024. (*Id*.) Thus, the amount of any tax credits owed to SPS, as the assignee of the rights of certain former dealerships, is not yet final and payable. (*Id*.)

7

Only after that amount is ratified by the RFB (or after the five-year examination period expires) will GM Brazil be obligated to pay the dealerships (and SPS as the assignee of certain dealerships). (*Id*.) And only if GM Brazil fails to do so at that time would SPS potentially have standing to bring any hypothetical lawsuit to collect those credits. (*Id*.)

### B.    The Brazilian Litigation

In incorrectly contending that it somehow has a current right to payment, SPS fails to acknowledge or advise this Court that the Brazilian courts have addressed this issue and reached the directly contrary conclusion. (App221-22.) Specifically, certain dealerships filed four unsuccessful lawsuits against GM Brazil seeking to shortcut the RFB ratification process and collect the credit amounts now. (*Id*.) In each of those lawsuits, the Brazilian court rejected the dealerships' claims as premature. (*Id*.)

For example, in a March 10, 2020 decision in Proceedings No. 1009627-38.2018.8.26.0565, 1st Lower Civil Court of São Caetano do Sul, Judge Érika Ricci—which decision is now final and unappealable— the court ruled as follows:

> [I]t is necessary to wait for the Federal Revenue Office [RFB] to determine the amount to be reimbursed, so that only then may the plaintiffs judicially claim the amount due to them, if the automaker [GM Brazil] does not pass on the credit or if the dealerships disagree with the value offered to them. It is important to emphasize that the plaintiffs have a mere expectation of right as a result of the favorable sentence to the defendant against the National Treasury, and there is no reason to speak, for now, of a jurisdictional provision capable of satisfying it.

8

(App222, App229-241.)  In other words, the dealerships (and SPS as the assignee of certain dealerships) currently have nothing more than "a mere expectation of right," and will not have an actionable claim unless and until (i) the RFB ratifies the credit amount or the five-year examination period expires and (ii) GM Brazil thereafter does not pay the credit amount to the dealerships and SPS.  (*Id.*)

An August 25, 2020 appellate decision of the 28th Private Law Chamber of Court of Justice of São Paulo, Reporting Court Justice Celso Pimentel, Appeal No. 1009226-39.2018.8.26.0565, similarly confirmed that a dealership "indeed does not have an interest in acting in the intended declaration of the updated value of the IPI credit," that its attempt to "shortcut" the ratification process by means of a lawsuit was improper, and that until the ratification process is complete, the dealership has only "a mere expectation of right, which will only materialize after the determination of the tax credit for offsetting."  (App222-23, App242-275.)  Notably, that court explicitly addressed and rejected the same argument SPS apparently raises here (*see* Br. 14), that SPS or the dealerships would have standing to bring suit if GM Brazil had in some way benefitted from the tax credits prior to the end of the five-year period.  (*Cf.*  App225-26 (rejecting the dealerships' argument that the defendant must pay them the "'total IPI [tax] credit that may be ascertained' in the event that the defendant 'uses the IPI [tax] credits'").)  This decision is also final and unappealable.

9

GM Brazil has never suggested that it would refuse to pay SPS or any dealerships once the payment amounts are final and payable. (App223.) On the contrary, GM Brazil has committed to make payments upon ratification or expiration of the five-year period. (*Id*.) SPS's "mere expectation of right" will therefore never give rise to an actionable legal claim. (*Id.*)

## C.    The Brazilian Discovery Proceeding

Notwithstanding these Brazilian court rulings—which foreclose any lawsuit by SPS to seek to collect tax credits it is not yet owed and which GM has never suggested that it would refuse to pay when due—SPS filed a pre-litigation discovery action in Brazil on February 12, 2021, in the 18th Civil Court of the Central Court of the State of São Paulo, seeking the production of evidence and documents pursuant to Article 381 of the Brazilian Code of Civil Procedure (the "Brazilian Discovery Proceeding"). (App223-24.) The purpose of such a pre-litigation discovery action is for the litigant (here, SPS) to potentially obtain documents in furtherance of its claims in a future merits proceeding. (App007.) The discovery SPS sought in the Brazilian Discovery Proceeding included the following:

> (i) Copies of all documents pertaining to the collections made by GM Brazil of IPI taxes on unconditional discounts on sales made to the dealers between June 1, 1990 and July 31, 1991.

> (ii) A list and copies of all invoices issued against the assigning dealers in the period in question in the IPI tax actions filed by GM Brazil.

(iii)  A list, dealer by dealer, of invoices and/or proof of payment of the IPI that may not be located by GM Brazil.

(iv)   All documents relating to the calculation of the IPI tax credit (spreadsheets, reports, forms, reports, etc.).

(v)  Accounting records pertaining to the calculation and use of the IPI tax credit, including, but not limited to, the IPI calculation book, ledger book, balance sheets, income statements, and other accounting and financial information.

(vi)  Information on the accounting recognition of the IPI tax credit in equity assets, with copies of all corresponding documents.

(vii)  Petitions for restitution, for transfer of claims to third parties, or petitions for compensation of IPI Rabo tax credits, at any time; Declaration of Federal Tax Credits and Debts (DCTF).

(viii)  Reports and related documents annually issued by the independent auditors to GM Brazil, as well as any communications exchanged on the matter and other working materials.

(ix)  Full copies of petitions, requests and administrative processes pertinent to the IPI tax, including, but not limited to, administrative process No. 13820.720316/2019-28, with an indication of the status and information on claims for qualification or use for any form of credit tax in question.

(x)  Other potential documents or information related to the recognition of the IPI tax credit.

(xi)  Documents on transfers that GM Brazil has made to the dealers or assignees of concessionaire rights due to receipt or use by any means of the IPI tax credits.

(*Id*.; App224-25.)

SPS sought the very same materials in the district court below.  Indeed, the same set of requests made in Brazil—with only minor translation differences—is

duplicated in the Declaration of Bruno Pedreira Poppa, submitted in support of SPS's Application. (*See* App073-83.) Mr. Poppa's declaration omits only Request (x) above, a significant tactical omission given that the scope of Request (x) is so all-encompassing as to capture essentially each and every document that SPS is seeking in the proposed subpoena submitted with its 1782 Application. (App225-27.)

SPS's assertions that it seeks only "some of the same information" from GM through its Section 1782 proceeding as it requested from GM Brazil in Brazil, and that its Section 1782 requests are merely "similar" to those in the Brazilian Discovery Proceeding (Br. 4, 22), is misleading. In reality, the two sets of document requests are effectively identical. (App007-08, App013 ("SPS admits that it seeks largely the same information here and before the Sao Paulo court. A comparison of what SPS seeks here and [in the Brazilian Discovery Proceeding] bolsters that conclusion." (citation omitted)); App014 (characterizing the discovery SPS sought in the Brazilian Discovery Proceeding as "essentially the same discovery" as it sought in its Section 1782 Application).)

Significantly, SPS has failed to identify—either in its Application here or in the Brazilian Discovery Proceeding—*any* potentially relevant information that is available only from GM, and not available in Brazil and obtainable from GM Brazil. To the contrary, Mr. Poppa's declaration acknowledges that the information it seeks

"can *only* be provided by [GM Brazil] itself or by its auditors" (App074 (emphasis added)), the very parties SPS seeks evidence from in Brazil (App227-228).  SPS also has confirmed that "*all* financial information concerning the IPI tax refunds or credits is *solely* in the possession of GM Brazil and its financial professionals." (App029 (emphases added).)

SPS's brief also repeats the misleading assertion made below that GM Brazil failed to comply with a Brazilian court order to produce the requested discovery, resulting in sanctions.  (Br. 12, 13.)  That is not correct.  In fact, GM Brazil was not properly served, and GM Brazil did not have proper notice of the proceeding and the evidence requested until after the Brazilian court entered its order on June 28, 2021. (App227.)  GM Brazil thereafter promptly filed an opposition, noting the failure to properly serve GM Brazil, and explaining why the discovery sought is unwarranted, including because SPS lacks legal standing to seek such evidence at this time.  (*Id*.) In mischaracterizing GM Brazil's opposition as somehow "belated" (Br. 4), SPS ignores that the court in the Brazilian Discovery Proceeding accepted GM Brazil's opposition and ordered SPS to file a response thereto. (App227.)

### D.    The District Court's Order Denying the Section 1782 Application

Not content to wait for the outcome of the Brazilian Discovery Proceeding, SPS chose to file its Application on December 23, 2021 seeking the issuance of a subpoena for a deposition and the production of documents from Appellee GM,

which is GM Brazil's parent entity.  As the district court observed below, "SPS made a ***tactical*** decision to file . . . its § 1782 application during the pendency of the Sao Paulo court discovery proceedings," thereby choosing to "bring parallel proceedings in a foreign court and a federal district court for ***the same discovery***."  (App015-16 (emphases added).)

GM was served with the Application on February 10, 2022, and filed its opposition to the Application on March 28, 2022.  (App017, 179.)  On May 5, 2022, SPS filed its reply.  (App275.)

On August 30, 2022, the district court denied the Application.  (App05-13.) In doing so, the district court carefully balanced the *Intel* discretionary factors and held that they weighed against granting the Application.  (App009-10.)  The court also held that the twin aims of Section 1782—providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts—"would not be served" by granting the Application.  (App013); *see also In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252).

**E.    Following the District Court's Order—in a Ruling That the District Court Could Not and Did Not Consider—the Brazilian Court Rules against SPS in the Brazilian Discovery Proceeding**

Two days after the district court's decision, the court in the Brazilian Discovery Proceeding issued its judgment regarding SPS's virtually identical

discovery requests in that proceeding as to GM Brazil (hereinafter, the "Brazilian Judgment"). (App318-25.)

In denying SPS's request for documents in the Brazilian Discovery Proceeding, that court emphasized that "the purpose of [such a proceeding under Article 381 of the Brazilian Code of Civil Procedure] is to preserve the evidence . . . ensuring that certain evidence is not lost or destroyed," and "one cannot transform the nature of the preliminary discovery lawsuit action into . . . an action to compel evidence." (App319-20 at 3-4.) The court confirmed that any further evaluation of evidence "intended to be used in any main action [i.e., future merits proceeding] . . . will belong to the judge of any main action . . . ." (App319.)

The court concluded that "[t]there is no space for a judgment against defendant [GM Brazil] in the presentation requested by plaintiff [SPS] . . . it being incumbent upon plaintiff, as the case may be, to make use of the appropriate and independent ways" of proceeding for "any future action." (App320.) The court further confirmed that the "sufficiency" of the documents GM Brazil already has provided to SPS, and whether any further production is warranted, "is a subject to be examined in any main action . . . ." (*Id.*)

The Brazilian court thus recognized that the documents SPS seeks are in fact available in Brazil from GM Brazil, albeit in a hypothetical future merits

proceeding—which, as discussed above, SPS lacks any standing to initiate—but were not appropriately sought by SPS through the Brazilian Discovery Proceeding.

### F.    The District Court Denies Appellant's Motion for Reconsideration

On September 13, 2022, SPS moved for reconsideration of the district court's Order, claiming that the Brazilian Judgment constitutes "newly discovered evidence." (App305-14.)  The district court denied SPS's motion based on well-settled law that "newly discovered evidence refers to evidence of facts in existence at the time of the party's original filing," and the Brazilian Judgment—issued after the district court's ruling—did not constitute "newly discovered evidence" and therefore provided no basis for reconsideration of the district court's decision. (App015 (citing *Lusick* v. *Lawrence*, 439 F. App'x 97, 99 (3d Cir. 2011)) (alterations omitted).)  The district court further held that reconsideration "based on evidence developed after the order was issued cannot be reconciled with the important values of finality and judicial efficiency." (*Id.*)  As discussed below, SPS's appeal brief does not provide, and SPS has therefore waived, any explanation of how the district court erred in refusing to consider the Brazilian Judgment or denying reconsideration.

On December 14, 2022, SPS filed a notice of appeal with this Court.

## STANDARD OF REVIEW

District court rulings on Section 1782 discovery requests are reviewed for abuse of discretion. *Biomet Orthopaedics*, 742 F. App'x at 694. Review is plenary if the district court misinterpreted or misapplied the law, or relied on inappropriate factors in the exercise of its discretion. *Id.* This Court similarly reviews the denial of motions for reconsideration for abuse of discretion. *United States* v. *Kalb*, 891 F.3d 455, 460 (3d Cir. 2018); *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83 (3d Cir. 2016) (applying abuse of discretion standard to denial of a Section 1782 application and subsequent denial of motion for reargument). The "deferential" abuse of discretion standard is "difficult to overcome." *Davies* v. *First Reliance Standard Life Ins. Co.*, 713 F. App'x 129, 132 (3d Cir. 2017) (internal citation omitted); *see also United States* v. *Tomko*, 562 F.3d 558, 565 (3d Cir. 2009) (same).

## SUMMARY OF ARGUMENT

Appellant does not come close to satisfying the "difficult" burden of demonstrating that the district court somehow abused its discretion. Nor does Appellant provide any basis for this Court to find that the district court committed reversible error. To the contrary, in denying the Application, the district court carefully and correctly found that the balance of the discretionary *Intel* factors weigh in GM's favor:

17

*First*, as the district court properly concluded, the first *Intel* factor favors GM because the evidence SPS seeks is in the possession of GM Brazil and thus is not "evidence . . . unobtainable absent § 1782(a) aid." (App011 (quoting *Intel*, 542 U.S. at 264).)  SPS sought virtually the same evidence from GM Brazil in the Brazilian Discovery Proceeding as it sought from GM through its Application, and GM Brazil in fact already produced information to SPS in response to those discovery demands in Brazil—and, to the extent SPS seeks yet more documents, they remain available in Brazil.

Where, as here, "the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782," the first *Intel* factor favors denial of the Application.  *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x at 85.  The Application represents an improper attempt to obtain from the parent company GM that SPS "admits" are "in the possession of [the subsidiary] GM Brazil" and within the reach of the Brazilian courts.  (App010.)  The district court rightly rejected the Application, and SPS's appeal arguments provide no basis to reverse the district court's finding.  The record demonstrably refutes SPS's claim that it did not "admit" that it could obtain the evidence it seeks in the Brazilian courts.  And in any event, whether or not SPS's statements were properly deemed an admission, there was ample basis for the district court to find that the evidence sought could be obtained in Brazil via the Brazilian

courts and therefore was accessible without resorting to Section 1782. SPS also purports to appeal the district court's "apparent requirement" that SPS "exhaust foreign options" before seeking discovery through Section 1782 (Br. 27), but the Order confirms on its face that the district court neither articulated nor imposed any such requirement.

*Second*, the district court correctly found that the second *Intel* factor—which looks at the nature of the foreign tribunal and its receptivity to the discovery sought—also favors GM. On appeal, SPS argues that GM failed to show that Brazilian courts would not be receptive to the discovery SPS seeks. Again, SPS ignores the record below that amply supported the district court's application of this *Intel* factor. GM's opposition papers in the district court identified four separate Brazilian lawsuits—and attached illustrative rulings from such suits—involving the exact tax credit question at issue here and in which the Brazilian courts made clear that they are not receptive to the discovery SPS seeks unless and until SPS were to someday obtain standing to bring a claim seeking repayment of those tax credits.

*Third*, the district court found that the third *Intel* factor—whether SPS is attempting to circumvent foreign proof-gathering restrictions—was "neutral, at least for now." (App011.) SPS's contention that the district court found this factor "weigh[ed] against SPS" (Br. 32) is thus plainly incorrect. It was not an abuse of

discretion for the district court to find that this factor was "neutral," particularly in view of the decisions of multiple Brazilian courts negating SPS's claims.

*Fourth*, the district court found that the final *Intel* factor— whether the request is "unduly intrusive or burdensome"—favored SPS.  The district court "assumed ***without deciding***" that this factor weighed in favor of granting the Application, despite the fact that SPS sought information "***far beyond the scope*** of this narrow dispute about tax overpayments," because it "may" be able to narrow the discovery to mitigate that plain burden.  (App012 (emphases added).)

SPS's attempt to rely on the Brazilian Judgment to demonstrate that the district court somehow abused its discretion is unavailing—which is unsurprising since the district court's Order preceded and was in no way premised upon the Brazilian Judgment.  Despite littering its brief with repeated references to the Brazilian Judgment, SPS fails in its brief to in any way challenge the district court's ruling that it could not consider the Brazilian Judgment because it post-dated its Order denying SPS's Application, and has thereby waived any such argument.  The district court explicitly considered and rejected SPS's attempt to introduce the Brazilian Judgment in its Reconsideration Order, explaining that the Brazilian Judgment did not constitute "newly discovered" evidence and therefore could not provide any basis for reconsideration.  SPS makes no attempt to contest that ruling, let alone demonstrate that the district court abused its discretion in denying its

motion for reconsideration.  This Court should therefore reject SPS's attempt to use the Brazilian Judgment as providing some purported ground for this Court to reverse the district court's Order denying the Application.

If this Court were to consider the Brazilian Judgment (and we submit it should not), it would only further support the district court's Order and only further confirm that this Court should afford deference to the district court's discretion in applying the *Intel* factors to deny the Application.  The Brazilian Judgment confirms that the discovery SPS seeks is in fact available in Brazil and may be pursued in a future merits proceeding, if SPS ever were to obtain standing to commence any such litigation.  Moreover, the Brazilian Judgment also confirms that—as GM argued below—granting the Application would circumvent Brazilian proof-gathering restrictions at this pre-litigation stage.

*Finally*, although the district court denied the Application under the discretionary *Intel* factors, and did not reach the question of whether the application meets the statutory requirements of Section 1782 or comports with the Federal Rules of Civil Procedure, those requirements provide an additional basis for affirming the district court's Order and denying the Application.  SPS fails to meet the Section 1782 statutory requirements because (1) GM Brazil—the true target of the Application—does not reside in, and is not found in, the District of Delaware, and (2) SPS fails to satisfy its burden to show that the requested information is "for use"

in a foreign proceeding that is within reasonable contemplation.  The Application also fails to comport with the Federal Rules of Civil Procedure because the discovery SPS seeks can be obtained from another source that is "more convenient, less burdensome, or less expensive," i.e., through GM Brazil.

The Court should affirm the district court's Order denying the Application, and reject SPS's baseless attempt to pursue duplicative discovery requests in Brazil and the United States.

## ARGUMENT

Section 1782 "authorizes, but does not require," that district courts provide judicial assistance for use in foreign proceedings.  *See Intel*, 542 U.S. at 255.  While Section 1782 is intended to "provid[e] efficient assistance" and "encourag[e] . . . similar assistance" from foreign countries (*see* App011 (citing *Biomet Orthopaedics*, 742 F. App'x at 696)), "these goals do not in turn mean that a party to foreign litigation is entitled to unbridled and unlimited discovery under the statute." *Bayer AG* v. *Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Rather, "Section 1782 vests [courts] with discretion to grant, limit or deny discovery." *Id.*; *see also Comision Ejecutiva Hidroelectrica del Rio Lempa* v. *Nejapa Power Co. LLC*, 341 F. App'x 821, 828 (3d Cir. 2009) ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." (citing *Intel*, 542 U.S. at 264)).

A district court may grant an application under Section 1782 only if three statutory requirements are each met:  (1) the person from whom discovery is sought resides or is found in the district, (2) the discovery is for use in a proceeding within reasonable contemplation before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or interested person. *See* 28 U.S.C. § 1782.

If these statutory prerequisites are each satisfied, the Supreme Court has identified four factors to guide courts when determining whether to exercise their discretion to grant the application:  (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.  "A discovery request may be denied on a discretionary basis if the [*Intel*] factors do not weigh in favor of it." *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. CV 17-4269-KM-JBC,

2019 WL 168828, at *5 (D.N.J. Jan. 10, 2019).  Section 1782 applications are also

subject to the discovery limits imposed by the Federal Rules of Civil Procedure.

In weighing applications brought pursuant to Section 1782, district courts also

"must guard . . . against the potential"—manifest in SPS's Application here—"that

parties may use § 1782 to investigate whether litigation is possible in the first place,

putting the cart before the horse.  The latter situation is not an appropriate one for a

court to compel discovery."  *In re Certain Funds, Accounts, and/or Inv. Vehicles

Managed by Affiliates of Fortress Inv. Group LLC*, No. 14-cv-1801 (NRB), 2014

WL 3404955, at *6 (S.D.N.Y. July 9, 2014).

## I.    THE DISTRICT COURT APPROPRIATELY EXERCISED ITS DISCRETION IN RULING THAT THE *INTEL* FACTORS WEIGH AGAINST THE APPLICATION

The district court correctly found that the balance of the *Intel* factors weighed

against granting SPS's Section 1782 Application.  SPS's arguments on appeal rehash

the same arguments that the district court weighed and rejected below, except that

SPS also improperly seeks to interject the Brazilian Judgment to somehow support

its infirm arguments.  The district court's discretionary findings are well supported

and the *Intel* factors weigh decidedly against the Application.

## A.    The District Court Correctly Held That the First *Intel* Factor Weighs in Favor of Appellee

SPS fails to provide any basis for this Court to second guess the district court's reasoned exercise of discretion in determining that, on balance, the first *Intel* factor weighs in favor of Appellee and against the Application.

### 1.    *The District Court Did Not Abuse Its Discretion in Concluding That Appellant Seeks the Same Discovery through its Application and the Brazilian Discovery Proceeding—as Appellant Itself Conceded Below*

SPS first argues that the district court committed reversible error by finding that SPS could seek the same evidence through the Application that it also was seeking in the Brazilian courts—a point SPS itself conceded below.  There was ample basis in the record for the district court to reach that conclusion, including SPS's own statements, and the district court's assessment of the overlapping scope of SPS's document requests was not an abuse of discretion.

The declaration of Mr. Poppa, submitted by SPS itself in support of its Application, expressly acknowledged that the information SPS seeks "can ***only*** be provided by [GM Brazil] itself or by its auditors" (App074 (emphasis added))—the very parties that were the subject of the Brazilian Discovery Proceeding.  SPS's memorandum of law in support of its Application likewise conceded that "***all*** financial information concerning the IPI tax refunds or credits is ***solely*** in the possession of GM Brazil and its financial professionals."  (App029 (emphases

added).)  SPS cannot meet the lofty showing required to demonstrate abuse of discretion by the expedient of disowning its own significant admissions that were fatal to its Application.

Moreover, beyond SPS's admissions, the fact remains that the discovery sought in the Application and Brazilian Discovery Proceeding is substantively identical, meaning that "the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782." *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x at 85.

The district court thus correctly held that the first *Intel* factor weighs in GM's favor based upon the complete—or substantively complete—overlap between the documents SPS sought through the Application and could seek in Brazil.  *See In re OOO Promnefstroy*, Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) ("Because the Court concludes that nearly all of the documents that the subpoena seeks are also in the possession of parties to the foreign proceeding, the first factor weighs squarely in favor of [the party opposing the request].").  SPS cannot escape the reality that the discovery it seeks through the Application is coextensive with the discovery that is available in Brazil and within the reach of the Brazilian courts, which SPS is free to seek from GM Brazil in Brazil—if SPS someday were to have standing in Brazil to commence litigation to pursue them.

SPS cannot overcome this infirmity by falsely claiming that GM Brazil refused to comply with SPS's virtually identical discovery requests in the Brazilian Discovery Proceeding. To the contrary, GM Brazil already has provided documents sufficient for SPS to evaluate what if any tax credit it will be owed, including the spreadsheet submitted to the Brazilian tax authority containing the amounts of the tax credits for each dealership, as well as a full set of the papers filed in the underlying proceedings brought by GM Brazil against the Brazilian federal government relating to the tax credits. SPS ignores its receipt of such documents and, as before the district court, makes no effort to explain why any further documents might possibly be required. And in any event, SPS may seek these materials from GM Brazil in Brazil, where they remain available—albeit in a future proceeding if SPS were to ever obtain standing to commence one.

As addressed below (*see* Argument § II, *infra*), SPS's brief does ***not*** challenge the district court's Reconsideration Order or its underlying rationale, thereby waiving any contention that it was wrongly decided. SPS's failure to argue for reversal of the Reconsideration Order is fatal to its attempt to rely upon the Brazilian Judgment—including, as to the first *Intel* factor, SPS's improper attempt to invoke the Brazilian Judgment as purported evidence that SPS cannot pursue the discovery it seeks from GM Brazil in the Brazilian courts. The Brazilian Judgment was not available to the district court at the time it weighed and denied SPS's Application,

and thus cannot impugn the district court's exercise of discretion or provide any basis for a finding of reversible error.

In any event, if the Brazilian Judgment were properly before this Court (and it is not), that judgment would only further confirm that the discovery SPS seeks is in fact available in the Brazilian courts—albeit only if SPS were to at some point in the future have an actual right to payment of the tax credits under Brazilian law and thereby acquire standing to pursue litigation.  Indeed, SPS effectively conceded as much in its motion for reconsideration, in which SPS confirmed that it would be able to seek and obtain the requested documents in Brazil "by filing the contemplated proceeding" (App312)—as expressly contemplated by the Brazilian Judgment, which likewise confirmed that SPS may seek additional documents from GM Brazil in "any main action," i.e., future merits action.  (App319-320.)

> 2. *The District Court Did Not Impose Any "Requirement" That Appellant "Exhaust Foreign Options"*

SPS's second purported ground for reversing the district court's discretionary determination under the first *Intel* factor is that the district court supposedly imposed an "apparent requirement" that SPS "exhaust foreign options" before seeking discovery through Section 1782.  (Br. 27-28.)  But the district court neither articulated nor applied any such requirement and SPS fails to identify any language from the Order or Reconsideration Order supporting its position.

### 3. *Appellant's Argument That GM Is Not a "Participant" in the Foreign Proceeding Is Unavailing.*

SPS further argues—without identifying any purported reversible error—that the first *Intel* factor should weigh in its favor because GM is not a participant in the foreign proceeding. SPS ignores well-settled law confirming that even if the targets of a Section 1782 application "are not 'participants,' per se, in the underlying [foreign] proceeding," assistance under Section 1782 "is both unnecessary and improper" so long as "the evidence is available to the foreign tribunal." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006). Furthermore, SPS's gambit is effectively an improper attempt to take discovery of the participant in the foreign proceeding (GM Brazil) through its corporate parent (GM), which courts have repeatedly rejected. *See, e.g.*, *Fuhr* v. *Deutsche Bank, AG*, 615 F. App'x 699, 700 (2d Cir. 2015) ("We find no error with the district court's conclusion that while the Section 1782 petition names Deutsche Bank AG as respondent, Fuhr actually seeks information from Deutsche Bank (Suisse)."); *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (denying discovery sought from parent company under Section 1782 when subsidiary company was a participant in the foreign proceeding); *In re Fischer Adv. Composite Components AG*, No. C08-1512 (RSM), 2008 WL 5210839, at *3 (W.D. Wa. 2008) (exercising discretion to deny discovery as unduly burdensome because it was available from the subsidiary as party to the foreign proceeding).

\*    \*    \*

SPS therefore fails to provide any basis to find that the district court abused its discretion in finding that the first *Intel* factor, on balance, weighs in favor of GM and against the Application.

## B.    The District Court Correctly Held That the Second *Intel* Factor Weighs in Favor of Appellee

For similar reasons, the district court correctly found that the second *Intel* factor also weighs in GM's favor.  On appeal, SPS contends that GM was required, and failed, to demonstrate that Brazilian courts would not be receptive to the discovery SPS seeks through the Application.  But GM's brief below identified four illustrative examples of Brazilian courts rejecting the argument—which SPS reprises here—that dealerships and others in SPS's shoes should be permitted to shortcut the RFB ratification process and seek to collect tax credit amounts now.  GM also submitted as exhibits for the district court's consideration two Brazilian decisions to that effect:  (i) a March 10, 2020 decision in the Lower Civil Court of São Caetano do Sul and (ii) an August 25, 2020 appellate decision by the 28th Private Law Chamber of Court of Justice of São Paulo.

These Brazilian decisions make clear that SPS lacks and may never obtain standing to pursue any claim for recovery of the tax payment.  SPS therefore cannot initiate any merits proceeding seeking any such recovery, to which it has no present entitlement and GM has never indicated it would refuse payment.  SPS may pursue

the documents it seeks from GM Brazil—which are available in Brazil and within the reach of the Brazilian courts—but only if it obtains such standing.

If this Court were to consider the Brazilian Judgment in its analysis (and it should not), that decision only further confirms that Brazilian courts are ***not*** receptive to the discovery SPS seeks unless and until SPS were to obtain standing. As here, "where the foreign tribunal restricts discovery, granting the application could undermine the [1782] statute's objective." *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008); *see also financialright GmbH* v. *Robert Bosch LLC*, 294 F. Supp. 3d 721, 735-36 (E.D. Mich. 2018) (observing that foreign court "restrict[ed] discovery" in finding that the second *Intel* factor favored defendant).

SPS cites one instance in which a Section 1782 application was granted for proceedings relating to a Brazilian probate court. (*See* Br. 31-32 (citing *In re De Melo Pimenta*, 942 F. Supp. 2d 1282, 1288 (S.D. Fla. 2013)).) That case is wholly inapposite here, however, because unlike that applicant, SPS is seeking the "same discovery" from a parent in the United States through its Application that it is simultaneously seeking from a subsidiary in the foreign proceeding. (App015-16.)

SPS also errs in arguing that this factor turns solely on whether there is any ***prohibition*** on Brazilian courts accepting evidence collected pursuant to a Section 1782 proceeding. To the contrary, this factor asks the court to consider the nature of the foreign tribunal and the character of the foreign proceedings, as well as the

receptivity of the foreign judiciary to U.S. federal court assistance. *See Intel*, 542 U.S. at 264-65. The district court properly determined that "the Sao Paulo court may not be receptive to the discovery I order, or I may duplicate that tribunal's efforts." (App011); *see also Saint-Gobain Adfors S.A.S.* v. *3M Co.*, No. 020MC00052MJDKMM, 2020 WL 6111632, at *4-5 (D. Minn. Oct. 16, 2020) (holding that the second *Intel* factor weighed against Section 1782 applicant where nature of the foreign court and the character of the proceedings indicated that the foreign court is "in a better position to determine the proper scope of discovery" than the U.S. court); *financialright GmbH*, 294 F. Supp. 3d at 733-34 (finding that the character of the proceedings "weigh[ed] heavily" against the Section 1782 application where multiple foreign courts had previously rejected applicant's claims); *In re Abud Valech*, No. 1:20-MC-23408-WPD, 2020 WL 8919124, at *7 (S.D. Fla. Dec. 31, 2020) (finding that Section 1782 application was a fishing expedition where applicant had unsuccessfully pursued multiple proceedings in Ecuador and sought unspecified information "on the off-chance that it may find some evidence of wrongdoing") (internal citation omitted), *report and recommendation approved*, No. 20-MC-23408-WPD, 2021 WL 1062228 (S.D. Fla. Mar. 18, 2021).

Accordingly, given the record before the district court (including the four Brazilian court rulings provided by GM), SPS has provided no basis to conclude that

the district court committed reversible error or abused its discretion in finding that the second *Intel* factor, on balance, weighs in favor of GM.

### C.    The District Court Did Not Err or Abuse Its Discretion in Finding the Third *Intel* Factor "Neutral"

The district court found that the third *Intel* factor—whether SPS is attempting to circumvent foreign proof-gathering restrictions—was "neutral, at least for now." (App011.)  SPS's erroneous attack on that determination relies on the Brazilian Judgment, which was not properly before the district court and which SPS has not argued should be before this Court.  Accordingly, SPS's argument as to the third *Intel* factor necessarily fails for lack of any predicate basis.

Moreover, if considered by this Court, the Brazilian Judgment has now confirmed that this *Intel* factor weighs squarely against SPS, and that granting the Application would have circumvented Brazilian proof-gathering restrictions at this pre-litigation stage.  That result tracks and confirms the district court's observation that "if the Sao Paulo court rules in favor of GM Brazil, any discovery I provide would likely circumvent foreign proof-gathering restrictions because the foreign tribunal has already rejected requests for the same documents."  (App012 (internal citations and alterations omitted).)

SPS tries to get around this fact by arguing that "the Brazilian court ultimately did ***not*** reject SPS's discovery requests."  (Br. 33 (emphasis in original).)  That argument is belied by the plain and unambiguous language of the Brazilian

Judgment.  In denying SPS's request for documents, the Brazilian court rejected SPS's attempt to "transform the nature of the preliminary discovery lawsuit action into . . . an action to compel evidence." (App319-320.)  The court ruled that "[t]there is no space for a judgment against defendant [GM Brazil] in the presentation requested by plaintiff [SPS]," and confirmed that the "sufficiency" of the documents GM Brazil already has provided to SPS, and whether any further production is appropriate, "is a subject to be examined in any main action . . . ." (*Id.*)  The Brazilian court thus held that such discovery should be pursued, if at all, at the appropriate time in a merits proceeding in the same court if SPS were ever to obtain standing to initiate any such proceeding—which, as discussed above, SPS presently lacks and may never obtain.  SPS cannot seriously dispute that the Brazilian court denied the relief it requested and ruled in GM Brazil's favor, in a ruling that is now final and unappealable.

As the district court observed, "SPS made a ***tactical*** decision to file . . . its § 1782 application during the pendency of the Sao Paulo court discovery proceedings."  (App015-16 (emphasis added).)  Because the Brazilian court dismissed SPS's proceeding and ruled that it may pursue discovery only if and when it gains standing, granting SPS's Application would circumvent those Brazilian proof-gathering restrictions. *See In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. 2020) (finding that when applicant "made the

tactical decision to seek discovery from its opponent (and its affiliates)" in the United States due to the limited ability to engage in pretrial discovery in Brazil, applicant evinced an attempt to make an "end-run around [Brazil's] proof gathering restrictions"); *In re IPC Do Nordeste*, No. 12-50624, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25, 2012*)* (weighing third *Intel* factor against applicant where, as here, the "reasonable explanation" for applicant seeking discovery in the United States was that applicant was "attempting to circumvent proof-gathering restrictions of the Brazilian court"); *In re Ex Parte Application of Eni S.p.A.*, 2021 WL 1063390, at *4 (D. Del. Mar. 19, 2021) (finding that a "discovery request pursuant to § 1782 is viewed as an attempt to circumvent foreign proof-gathering restrictions when the foreign tribunal has already rejected requests for the same documents").

Where (as here) the Section 1782 application "is an attempt to bypass limitations on discovery imposed by foreign tribunals," the third *Intel* factor "counsels against" granting the requested discovery. *Pinchuk* v. *Chemstar Prod. LLC*, No. 13-MC-306-RGA, 2014 WL 2990416, at *3 (D. Del. June 26, 2014) (citing *Intel*, 524 U.S. at 265). That is all the more true where the foreign courts "would not allow use of their procedures to obtain discovery at this time," as confirmed here by both the Brazilian Judgment and the multiple prior Brazilian court decisions addressing this issue. *In re Venequip, S.A.*, No. MC 21-2090, 2022 WL 834780, at *10 (E.D. La. Mar. 21, 2022) (denying 1782 request and finding that 1782 applicant

35

was "circumventing [the foreign court's] procedure, which would not allow discovery at this stage."); *see also In re Ex Parte Application of Eni S.p.A.*, 2021 WL 1063390, at *4. It thus was not reversible error or an abuse of discretion for the district court to find that this factor was "neutral, at least for now." And to the extent this Court were to take into account the Brazilian Judgment, that judgment only further confirms that this factor weighs in favor of denying the Application and affirming the district court's Order.

### D.   Appellant Cannot and Does Not Appeal the District Court's Holding That the Fourth *Intel* Factor Favored Appellant

As to the fourth and final *Intel* factor, the district court "assumed ***without deciding***" that the fourth *Intel* factor favored granting SPS's Application. (App012 (emphasis added).) The district court recognized that "[s]ome of SPS's document requests seek information ***far beyond the scope*** of this narrow dispute about tax overpayments," but observed—again, "without deciding"—that it "may" be able to somehow narrow SPS's requests to reduce the manifest and significant burden they would impose on GM. (*Id*. (emphasis added).) SPS does not appeal that holding or contend that the district court abused its discretion by "assum[ing]," for SPS's benefit, that this factor favored its Application.

36

### E.  The District Court Did Not Commit Reversible Error in Observing That Granting the Application Would Disserve the Aims Underlying Section 1782

Finally, SPS argues that the district court committed reversible error with regard to its "evaluation" of the aims of Section 1782.  This argument fails as an initial matter because the district court's Order makes clear that denial of the Application was based on the court's balancing of the discretionary *Intel* factors, not on its further discussion of Section 1782's broader policy aims.  Thus, even if the district court's discussion of the aims of Section 1782 were in some way incorrect, that would not absolve SPS of its failure to satisfy the discretionary *Intel* factors.

SPS bases its argument on dicta in the final paragraph of the district court's Order, after the district already had concluded that "the balance of the *Intel* factors favors GM."  (App013.)  In that final paragraph, the district court observed that, "[m]oreover, the aims of § 1782 would not be served by granting the [A]pplication." (*Id.*)  In support of that observation, the district court noted that SPS itself had stated that it was attempting to use Section 1782 to "put an end to" the Brazilian Discovery Proceeding by means of seeking and obtaining the same discovery from GM, GM Brazil's parent company.  (*Id.*)  As the district court correctly observed, that "is ***not*** § 1782(a)'s role." (*Id.* (emphasis added).)  There was nothing improper—much less any reversible error—about the district court's observation that SPS's attempt to use

Section 1782 in this way was facially inconsistent with the statute's purpose, particularly given that the district court's ruling was not based upon such dicta.

## II.   APPELLANT HAS WAIVED ANY CHALLENGE TO THE DISTRICT COURT'S DENIAL OF ITS MOTION FOR RECONSIDERATION

As noted, nowhere in its appeal brief does SPS ever argue that the district court erred in rejecting SPS's attempt to introduce the Brazilian Judgment—issued only *after* the district court's August 30 Order—as somehow constituting "new evidence" justifying reconsideration of the Order.  SPS has therefore waived any such contention and cannot purport to rely upon the Brazilian Judgment on appeal.

As the district court observed in denying SPS's reconsideration motion, newly discovered evidence refers to "evidence of facts in existence at the time of [the party's] original filing."  (App015 (citing *Lusick*, 439 F. App'x at 99).)  Accordingly, permitting reconsideration based "on evidence developed *after* the [original] order was issued . . . would encourage parties to do what SPS did here—bring parallel proceedings in a foreign court and a federal district court for the same discovery." (*Id.* (emphasis added); *see also* App015-16 ("SPS made a tactical decision to file . . . its § 1782 application during the pendency of the Sao Paulo court discovery proceedings.  Having caused two courts to review and rule on its discovery requests, SPS must now live with the consequences of that decision.").)

It is well-settled that an appellant "must state all issues raised on appeal in the opening brief," *United States* v. *Albertson*, 645 F.3d 191, 195 (3d Cir. 2011), and

arguments not raised in the opening brief therefore are waived, *Grant* v. *Saul*, No. CV 19-2555, 2020 WL 977323, at *3 (E.D. Pa. Feb. 28, 2020).  In its opening brief, Appellant did not—and could not—explain how the district court abused its discretion in denying its motion for reconsideration and refusing to consider the Brazilian Judgment, and has therefore waived any such contention on appeal.

Given SPS's unfounded reliance on the Brazilian Judgment as a predicate basis for its appellate arguments under the *Intel* factors, this Court should reject SPS's request for reversal based on this fundamental defect alone.  Moreover, as discussed above, if this Court were to consider the Brazilian Judgment despite the fact that it was issued after the Order—and it should not—that judgment would only further support affirmance.

## III.     THE ORDER ALSO SHOULD BE AFFIRMED BECAUSE THE APPLICATION DOES NOT MEET THE REQUIREMENTS OF SECTION 1782 OR COMPORT WITH THE FEDERAL RULES

This district court denied SPS's Application under the discretionary *Intel* factors, and therefore did not need to reach the additional questions of whether the Application satisfies the statutory requirements of Section 1782 or comports with the Federal Rules of Civil Procedure.  (App009-010.)  SPS's Application fails in each of those further respects, which each provides a separate, independent basis for affirming the district court's Order denying the Application.

39

SPS fails to meet the Section 1782 statutory requirements because (1) GM Brazil—the true target of the Application—does not reside in, and is not found in, the District of Delaware, and (2) SPS has failed to show that the requested information is "for use" in a foreign proceeding that is within reasonable contemplation.  The Application also does not comport with the Federal Rules of Civil Procedure, which do not permit discovery that can be equally obtained from another source that is "more convenient, less burdensome, or less expensive," such as—in this case—through GM Brazil in Brazil.  *See* Rule 23(b)(2)(C) and Rule 45.

### A.    The Application Fails to Satisfy Section 1782's Requirements Because GM Brazil, the True Target of the Application, Is Not Found in the District of Delaware

The true target of the Application is a foreign subsidiary—GM Brazil—that does not reside in, and is not found in, the District of Delaware.  SPS concedes that GM Brazil is a wholly owned subsidiary of GM that is found in Brazil, ***not*** in Delaware.  (App026, App031.)  Indeed, the declaration that SPS submitted in support of its Application states unequivocally that the information SPS seeks through the Application can "***only*** be provided by [GM Brazil] itself or by its auditors."  (App074 (emphasis added).)

Federal courts have repeatedly refused to allow foreign litigants to use Section 1782 to compel U.S. parent companies to produce information that can be obtained from foreign subsidiaries that are parties in the foreign proceeding.  *See Kestrel Coal*

*Pty. Ltd.* v. *Joy Global, Inc.*, 362 F.3d 401, 405 (7th Cir. 2004) (reversing a district court's decision ordering a domestic entity to produce documents belonging to a foreign subsidiary and finding that "Section 1782(a) itself neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity," and that the distinction should be enforced because the applicant "does not contend . . . that the requirements for piercing the corporate veil under Delaware law have been met" (internal citations omitted)); *Pinchuk* v. *Chemstar Prod. LLC*, No. 13-MC-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014) (finding that "the location of the remaining documents [sought through a Section 1782 application] . . . tilt[s] the overall balance towards quashing the discovery requests for the unproduced documents located abroad."); *In re Application of Godfrey*, 526 F. Supp. 2d 417, 424 (S.D.N.Y. 2007) ("[T]here is no reason to conclude that *Intel* stands for the proposition that § 1782 may be used to compel discovery of documents located abroad for use in foreign judicial proceedings.").

Accordingly, because the relevant information concerning the Brazilian tax payments and any associated tax credits concededly is located in Brazil, SPS's efforts to obtain backdoor access to those same documents through GM Brazil's parent in a jurisdiction thousands of miles away from the source of SPS's claims and requested discovery should be rejected.

**B.    The Application Fails to Satisfy Section 1782's Requirements Because Appellant Has Not Shown That the Requested Information Is "For Use" in a Foreign Proceeding within Reasonable Contemplation**

SPS also fails to show that the requested information is "for use" in a foreign proceeding that is within reasonable contemplation.  SPS offers little more than a conclusory assertion that the "discovery sought in the Section 1782 Application is 'for use' in" the future merits proceeding it may ultimately bring in Brazil.  (Br. 36.) SPS's say-so in this regard cannot satisfy its burden; nor could SPS do so in any case, as SPS lacks standing to bring a claim in Brazil because the tax credits have not yet been ratified by the RFB and GM Brazil has not refused to make any payment it owes.

This conclusion is supported by four Brazilian courts that have addressed this precise issue (and—to the extent considered by this Court—the Brazilian Judgment). SPS's unsupported assertion that it would have standing now to obtain the evidence and pursue its claims if GM Brazil has benefitted from the tax credits (Br. 14) is contradicted by the plain language of these decisions rejecting that precise argument (*see, e.g.*, App255-56).  Nor is there any basis for SPS to have standing in the future because GM Brazil never has refused to allocate those credits—once finally ratified by the RFB—to the dealerships, including the former dealerships who assigned their rights to SPS.

42

For a foreign proceeding to be within reasonable contemplation, Section 1782 "requires some showing of objective indicium and a concrete basis that a contemplated action ***will proceed***." *In re JSC United Chemical Co. Uralchem*, No. 20-3651, 2020 WL 4251476, at \*4 (D.N.J. July 24, 2020) (internal citation and alterations omitted) (emphasis added). SPS argues that it meets this standard because it has "retained counsel to engage in negotiations with GM Brazil in an attempt to build its case," and it is "committed to pursuing the IPI tax claims and seeking indemnification from GM Brazil." (Br. 38.) But merely "[r]etaining counsel and discussing the possibility of initiating litigation is not enough" to demonstrate reasonable contemplation of litigation. *Matter of Wei for Ord. Seeking Discovery Under 28 U.S.C. § 1782*, No. 18-MC-117-RGA, 2018 WL 5268125, at \*2 (D. Del. Oct. 23, 2018). There is nothing here suggesting—much less "a concrete basis" to conclude—that any hypothetical merits action in Brazil will ever proceed or that SPS will ever obtain standing to commence any such action.

### C.    The Federal Rules Do Not Permit the Broad Discovery Appellant Is Seeking

The Federal Rules provide a separate basis for denying SPS's request for documents and thus an independent basis to affirm the district court's Order. *See* 28 U.S.C. § 1782(a) (discovery shall be conducted "in accordance with the Federal Rules of Civil Procedure"); *Bayer AG* v. *Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999) ("Section 1782 . . . incorporates by reference the scope of discovery permitted

by the Federal Rules of Civil Procedure."). Rule 45(c)(1) requires that parties serving a subpoena "take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena," and Rule 26(b)(2)(C) similarly provides that a court should not permit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive."

Here, the decades-old documents that SPS seeks to force GM to produce have no possible bearing on the Brazilian tax credit issue. For example, SPS is seeking 30+ years of financial statements and audit reports for GM and GM Brazil, regardless of whether those records have anything at all to do with Brazilian IPI tax payments or any associated tax credits. (*See* App061-63.) And SPS's proposed subpoena also seeks Rule 30(b)(6) deposition testimony concerning those same financial records and communications over many decades. SPS does not—and cannot—explain the relevance of its extremely broad document requests and deposition topics.

Furthermore, many of the documents will be in Portuguese and would require translation into English for review by U.S. lawyers and the district court, or would potentially be subject to privileges and data protection and privacy requirements governed by Brazilian law. It is more logical and more efficient for such Brazilian law disputes to be resolved by a Brazilian court familiar with these privileges and protections—and, of course, fluent in Portuguese—rather than proceeding before a

44

U.S. court.  There is no basis to impose the undue burden and expense on GM arising

from the sheer volume of time and resources required for any such translation and

production.

## CONCLUSION

For the foregoing reasons, the district court's Order—and, to the extent

subject to appeal, the Reconsideration Order—should be affirmed.


Respectfully submitted,

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

By: /s/  Daniel A. Mason
    Daniel A. Mason (#5206)
    500 Delaware Avenue, Suite 200
Of Counsel:                         Post Office Box 32
Lewis R. Clayton                    Wilmington, DE 19899-0032
Darren W. Johnson                   (302) 655-4410 *phone*
Amitav Chakraborty                  (302) 655-4420 *fax*
PAUL, WEISS, RIFKIND,               Email:  dmason@paulweiss.com
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064


                                    *Counsel for Respondent-Appellee*
                                    *General Motors Company*


Dated:  June 23, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      I am a member of the bar of this Court.

2.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,622 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f);

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font;

3.      The text of the electronic copy of this brief filed using this Court's CM/ECF system is identical to the text in the paper copies filed with the Clerk; and

4.      The electronic copy of this brief filed using this Court's CM/ECF system was scanned for viruses using Symantec Endpoint Protection, and no viruses were detected.

*/s/ Daniel A. Mason*

Daniel A. Mason (#5206)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
500 Delaware Avenue, Suite 200
Post Office Box 32
Wilmington, DE 19899-0032
(302) 655-4410 *phone*
(302) 655-4420 *fax*
Email: dmason@paulweiss.com

46