1          IN THE UNITED STATES COURT OF APPEALS
                 FOR THE THIRD CIRCUIT
2

3
   SPS CORP I – FUNDO DE          ) Case No. 22-3331
4    INVESTIMENTO EM DIREITOS     )
    CREDITÓRIOS NÃO PADRONIZADOS,  )
5                                 )
             Applicant-Appellant, ) 9:30 a.m.
6                                 )
   v.                             ) December 11, 2023
7                                 )
   GENERAL MOTORS COMPANY,        )
8                                 )
             Respondent-Appellee. )
9
                    ON APPEAL FROM THE
10            UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE
11     HON. COLM F. CONNOLLY, U.S. DISTRICT CHIEF JUDGE
                CASE NO. 1:21-mc-00565-CFC
12

13
                   BEFORE APPELLATE PANEL:
14
           HON. STEPHANOS BIBAS, Circuit Judge
15         HON. DAVID J. PORTER, Circuit Judge
          HON. ARIANNA J. FREEMAN, Circuit Judge
16

17
   APPEARANCES (see next page)
18

19

20

21

22

23       Veritext National Court Reporting Company
                    1801 Market Street
24                     Suite 1800
                  Philadelphia PA 19103
25                   (888)777-6690

```
 1    APPEARANCES:
 2    For the Appellant:
 3              GABRIELA M.B. SCANLON, ESQ. (ARGUED)
              MB SCANLON
 4              4301 50th Street NW
              1st Floor
 5              Suite 102
              Washington, DC 20016
 6
 7    For the Appellee:
 8              LEWIS R. CLAYTON, ESQ. (ARGUED)
              PAUL WEISS RIFKIND WHARTON & GARRISON
 9              1285 Avenue of the Americas
              New York, NY 10019
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    P R O C E E D I N G S

2                    MS. SCANLON:  -- Fundo de Investimento

3    em Direitos Creditorios Nao Padronizados.  Your

4    Honors, I would like to reserve four minutes for

5    rebuttal.

6                    HON. BIBAS:  Granted.

7                    MS. SCANLON:  Your Honors, Appellant's

8    Section 1782 application is the quintessential example

9    for the proper use of Section 1782.  However, the

10   district court's cursory and conclusory opinion

11   strayed so markedly from Intel and this Court's

12   interpretation of these discretionary factors

13   embracing a different set -- and inappropriate set of

14   factors for foreign applicants.

15                    The district court's opinion did not

16   factor nearly four decades of case law built by this

17   Court in John Deere, in Bayer, in Chevron, in O'Keeffe

18   and, most recently, in Biomet.  The district court's

19   decision must be vacated as it holds SPS to a far more

20   restrictive standard concerning the use of Section

21   1782.  The decisions simply disregard the liberal

22   approach that both Congress and this circuit and this

23   Court have applied for foreign applicants using

24   Section 1782.

25                    HON. BIBAS:  What's the relevance of

1  the more recent Brazilian decision saying it's too

2  early to get this information?  We're not saying you

3  won't be able to get it but it's too early.  Go file a

4  suit and then try to get it later.

5                    MS. SCANLON:  Your Honor, with all

6  respect, the decision does not say that.  The decision

7  that we have in the Appendix says that SPS had

8  two favorable decisions and the decision says I have

9  no power to compel General Motors Brazil to produce

10  the entirety of the documents.  It did not say that

11  caution that we have to wait.  That was not the

12  content of the decision.  The decision simply states I

13  understand that SPS that I have ruled, me, Brazilian

14  judge, that I have ruled SPS -- sorry -- General

15  Motors to produce the entirety of the evidence.  And

16  it did not.  However, my power to compel at this point

17  General Motors Brazil to produce the entirety of the

18  documents that SPS seeks is simply restricted because

19  of Brazilian law.

20                    HON. BIBAS:  Is this the September 1st,

21  2022 decision by Edna Kyoko Kano --

22                    MS. SCANLON:  Yes, Your Honor.

23                    HON. BIBAS:  -- Appendix 320?

24                    HON. PORTER:  And the documents that

25  you're seeking in that proceeding, the entirety of

1   those documents, they're in the possession of GM

2   Brazil?

3                   MS. SCANLON:  As -- that's what we

4   assume so that they are in the possession because the

5   point here, Your Honors, is the General Motors Brazil

6   -- the documents that we are seeking, that SPS is

7   seeking, specifically, it's under a sealed

8   administrative tax proceeding.  General Motors can be

9   the only person to show those documents to show

10  whether General Motors Brazil had, in fact, taken

11  economic benefits of the IPI tax credit.  That's the

12  importance here, the relevance.  The actual amount.

13  And the proceeding is under seal and we have no way of

14  finding what the spreadsheets that they provide, the

15  limited fraction of discovery they provided in Brazil,

16  to get the full picture of what was the precise -- if

17  it was the precise amount credited by General Motors

18  Brazil.

19                  HON. BIBAS:  Are the statutory factors

20  satisfied here?  Is there a contemplated proceeding?

21  Nothing's been filed.  Your client says it wants this

22  in order to figure out whether and when to file.

23  Shouldn't we -- do we even -- is it satisfied?  And is

24  that a jurisdictional requirement such that maybe we

25  should just dismiss for lack of jurisdiction?

1          MS. SCANLON:  No, Your Honor, because

2     the purpose of Section 1782 -- if we are going to wait

3     a merits proceeding in Brazil for maybe the similar

4     evidence to be produced, that kills the purpose of the

5     Section 1782.  Here, there is a contemplated

6     proceeding.

7          In fact, in Mr. Poppa's declaration, in

8     both his first declaration and his second declaration,

9     foreign counsel for SPS, he states that since 2019, he's

10    evaluating the proper -- the proper way to start this

11    contemplated proceeding.  And that's why SPS was

12    diligent enough to file the preliminary discovery

13    proceeding in Brazil to seek that very evidence.

14          And it is different from the four

15    proceedings that Appellee mentions on their briefs.

16    Why?  Number one, it concerns different plaintiffs.

17    And it concerns different causes of action as we have

18    on the Appendix.  Here, the contemplated proceeding

19    has another cause of action that it's relied upon the

20    actual economic benefit from the IPI tax credits.

21    That's the most important question.  And, of course,

22    it is contemplating because we have -- we have a cause

23    of action under Brazilian law.  And they are ready to

24    file the proceeding.  And they can do --

25          HON. PORTER:  So are you saying that

1    the four cases where SPS has been dismissed for lack

2    of standing did not include a claim -- the economic

3    benefit claim that you just mentioned?

4                    MS. SCANLON:   Those cases, Your Honor,

5    does not concern SPS at all.   Those cases concern

6    General Motors Brazil but with different plaintiffs.

7    SPS is not involved on that.   The two cases that they

8    mentioned as part of their Lucas Simao declaration,

9    one is not even from the Sao Paulo court is another

10   jurisdiction concerning a different plaintiff and

11   different causes of action which related to

12   obrigação de fazer, a to-do obligation.   That's not what

13   we have in our cause of action the way Mr. Poppa,

14   declarant for SPS, describes.

15                    And also, the other proceeding on the

16   courts of appeal of Sao Paulo, again, different

17   plaintiff.   And it's requiring the Court to establish

18   the proper and the correct amount of the IPI tax

19   credit for the car dealerships.   That is exactly what

20   we're not trying to do.   We want to start the

21   proceeding based on the grounds of SS -- General

22   Motors Brazil used.   It had economic advantage of this

23   IPI tax credits.   And therefore, because SPS is

24   entitled as the actual taxpayer of those credits to

25   seek those credits back, the proper amount and the

1     economic benefit has to be specific.

2                    HON. FREEMAN:  So Intel tells us that

3     even when discovery is authorized, district courts

4     have very broad discretion to decide whether it's

5     appropriate.  And so, I understand you believe that

6     discovery was authorized and you believe that the

7     district court misapplied the Intel factors.  But

8     ultimately, the district court said none of that

9     matters because the purpose of a statute would not be

10    realized by allowing this parallel discovery mechanism

11    in the United States when you were looking for the

12    exact same evidence in Brazil.  So how is that

13    inconsistent with Intel?

14                   MS. SCANLON:  Well, Your Honor, it's

15    not only inconsistent with Intel but it is

16    inconsistent with Bayer, Chevron, O'Keeffe and Biomet,

17    specifically.  So, number one, the district court did

18    not even review the statutory requirements which, by

19    the way, are met here.  What actually General Motors

20    is saying that they want to substitute the actual

21    target of that subpoena.  And in Biomet, that is

22    expressly what the Court denies here and says we

23    cannot look beyond what the statute is saying.

24                   With respect to an interested person,

25    that is -- we are an interested person.  That is no

1   question.  They don't even raise it about it.

2                   With respect to the contemplated

3   proceeding is, in fact, for use because Certain Funds,

4   the decision in Certain Funds, is broad whenever you

5   can use an evidence for enhance your possibilities of

6   getting what you want in the foreign proceeding,

7   that's what it is.

8                   Now with respect to the Intel factors.

9   Number one, the first Intel factor concerns whether

10  the target for General Motors United States is a

11  participant in the foreign proceeding and not whether

12  you have to exhaust foreign discovery issues.  And

13  here, even Courts, specifically Bayer and O'Keeffe --

14  and in Bayer, there's a very specific quote that the

15  judge includes here.  It says that "Indeed, a

16  'quasi-exhaustion requirement' of the kind advocated

17  by BetaChem on appeal has been rejected by those

18  courts that have addressed it."  Same thing in O'Keeffe

19  and same thing in Biomet.  There's no foreign

20  exhaustion discovery requirement.  And the district

21  court took and punished SPS from seeking the discovery

22  abroad.  And that is not a requirement under the first

23  Intel factor.

24                  The second Intel factor, Your Honor,

25  look into the receptivity.  Receptivity meaning the

1  burden of showing that the Court in Brazil would not

2  be receptive to an evidence produced in the United

3  States has to be specific.  In O'Keeffe, they point

4  here that you have to have "Examples of [such]

5  authoritative proof include 'a forum country's judicial,

6  executive or legislative declarations that

7  specifically address the use of evidence gathered

8  under foreign procedures'."

9           That was not the case here.  Even the

10  district court, the district court judge recognized

11  that it was pure speculative.  As they say on their

12  briefs, the four decisions that they mention don't

13  even concern SPS.  They're different plaintiffs and

14  different causes of action.  So receptivity here is

15  not in accordance with what the circuit has ruled in

16  the past.

17           Now looking into foreign

18  proof-gathering restrictions, let's look at Intel.  Intel

19  -- in fact, Judge Ginsburg -- she mentions Bayer, the

20  Bayer precedent.  Why is it so important?  Because we

21  -- there is no foreign proof-gathering restrictions.

22  There is a difference.  And this is what Chevron

23  mentions.  There is a true difference between I went

24  to a foreign court -- and even if the foreign court

25  denied my request, which was not what happened here

1    with SPS -- in fact, it granted the request twice.

2                    HON. PORTER:  Then why -- I don't

3    understand then why you need the 1782 discovery.  The

4    information you're seeking is within the forum

5    tribunal's jurisdictional reach.  Correct?

6                    MS. SCANLON:  Well, Your --

7                    HON. PORTER:  And you've got part of

8    what you want.  They just haven't given it all to you

9    yet.  Why do you need to come to GM for this

10   information?

11                   MS. SCANLON:  Well, Your Honor, they

12   haven't complied to this date with the first -- with

13   the preliminary discovery proceeding.

14

15                   HON. PORTER:  Isn't that a discovery

16   dispute?  That's not a 1782 issue.  That's just a

17   discovery dispute.

18                   MS. SCANLON:  Well, but, Your Honor,

19   the proper requirement under 1782 is not foreign

20   exhaustion.  And it is not even whether the discovery

21   is available abroad. The discovery may be

22   available abroad but the fact is that General Motors

23   Brazil did not produce.  And the selective quote that

24   they include as part of their papers that the evidence

25   is in Brazil is actually selective because what the

1    declarant says is because General Motors Brazil is a

2    limited liability company, it doesn't have published

3    financial statements.  And the only way to know that

4    is potentially within General Motor Brazil and they

5    haven't produced that.

6              HON. PORTER:  I guess my question is

7    1782 isn't a way to -- if you're dissatisfied with the

8    progress you're making in discovery in Brazil and

9    you're frustrated because they're not complying as

10   much as you want them to and the Court isn't

11   compelling them to comply, 1782 isn't a way to get

12   around that problem.  It's a way to get discovery

13   that's not within the jurisdictional reach of the

14   foreign court.  But this discovery seems to me is in

15   the jurisdictional reach of the Brazilian courts.

16   They're just not giving you what you want when you

17   want it.

18             MS. SCANLON:  Well, Your Honor, that is

19   not the first Intel factor what turns into whether

20   General Motors United States is a participant to the

21   Brazilian proceeding.  The Brazilian courts have no

22   jurisdiction on an American proceeding.

23             And if we look at the Chevron --

24             HON. PORTER:  No, no.  The question is

25   whether the discovery is within the Court's

1  jurisdictional reach not whether General Motors is

2  within the jurisdiction.

3               MS. SCANLON:  But the first Intel

4  factor, Your Honor, as in Intel, as in Bayer, and all

5  the other -- Chevron, and specifically Chevron, is not

6  with -- is not if discovery is within the

7  jurisdictional reach because what would be the purpose

8  of the Section 1782 and the twin aims of the statute

9  which is -- provide efficient litigation -- so to

10 foreign litigants -- and also to be an effective --

11 and the United States to rule by an example.  And in

12 Chevron, that issue specifically was I don't care if

13 the Ecuadorian court denied the same discovery or even

14 if it's -- I don't care.  It's not for me, a U.S.

15 court, to get into those merits.  As of now, I can

16 produce the discovery and whether the Court will

17 accept, that's what's important.  So in Chevron, this

18 issue was specifically discussed.

19               I know that I ran out of time.

20               HON. BIBAS:  Yes.  Do you have anything

21 else?

22               HON. PORTER:  No.

23               HON. BIBAS:  All right.  We'll hear you

24 back on rebuttal for your four minutes.

25               MS. SCANLON:  Okay.

1          MR. CLAYTON:  May it please the Court.

2    Lew Clayton for the Appellee, General Motors.

3          There is very broad discretion given to

4    district courts under this statute.  District --

5          HON. BIBAS:  Before we even get to the

6    discretion, the statutory factors, neither side has

7    briefed are these jurisdictional or not.

8          MR. CLAYTON:  Well, we did raise -- I

9    wanted to say we think, first of all, the district

10   court correctly exercised its discretion.  But going

11   to the jurisdictional factors --

12         HON. BIBAS:  Are they jurisdictional?

13         MR. CLAYTON:  Well, yes.  They're

14   jurisdictional in the sense that they are requisites

15   of the statute.  The statute gives the --

16         HON. BIBAS:  Right.  If they're not

17   jurisdictional, you can skip over them and get to the

18   discretionary ones.  But if they're jurisdictional,

19   you would have to tackle them first.  And I just

20   didn't see anything in your briefing that talked one way

21   or the other about this.  I mean, 1782 doesn't use the

22   word "jurisdiction" but is there any other source of

23   jurisdiction here?

24         MR. CLAYTON:  Well, Your Honor, I

25   regard -- we did brief below and here the issue of

1  reasonable contemplation, whether this statute --

2  whether the proceeding they want to bring in Brazil is

3  within reasonable contemplation.  I think that's a

4  jurisdictional requirement here.  And I don't think

5  they have any claim.  And that wipes out this cause of

6  action.

7              In addition, what they're seeking here,

8  the real target ---

9              HON. PORTER:  Well, back up.

10             MR. CLAYTON:  Yes.

11             HON. PORTER:  Why -- you're talking

12 about the for use in a foreign proceeding --

13             MR. CLAYTON:  Yes.

14             HON. PORTER:  -- element?

15             MR. CLAYTON:  Yes.

16             HON. PORTER:  Why -- whether or not

17 it's jurisdictional, why isn't that a satisfied?  She

18 says we've got a case lined up.  As soon as we can,

19 we're going to pull the trigger.

20             MR. CLAYTON:  Because --

21             HON. PORTER:  Isn't that enough?

22             MR. CLAYTON:  Because the record proves

23 the opposite.  Because in this case -- and they cite

24 to cases where, for example, someone comes in with a

25 lawyer saying here's our cause of action and cites

1    authorities.  We have an overwhelming record which

2    they concede.  And what is that overwhelming record?

3    Four decisions by people in just -- they say, well,

4    those decisions don't involve SPS.  They involve other

5    GM dealers.  Every GM dealer in Brazil is within the

6    same -- is identically situated.  In each one of those

7    cases, the Brazilian courts say you have no cause of

8    action because here, we're waiting for ratification of

9    the credit.  Until ratification -- and by the way,

10   this whole discovery dispute -- we're talking about

11   ratification ending in July 2024.  And GM Brazil has

12   said when it is ratified, GM Brazil is going to pay.

13                    HON. BIBAS:  We've said this is a

14   modest prima facie showing to be made.  You know, that

15   doesn't -- it seems like that's satisfied here.  Do we

16   defer to the district court?  I mean, abuse of

17   discretion review.  Do we defer to the

18   district court's judgment that, like, yeah, that's

19   contemplated enough?

20                    MR. CLAYTON:  On this issue, first of

21   all, the district court, to be fair, did not rule.

22                    HON. BIBAS:  Okay.

23                    MR. CLAYTON:  The district court -- so

24   there's nothing to do --

25                    HON. BIBAS:  All right.  So there's no

1   deference --

2                   MR. CLAYTON:  But I don't think you

3   would defer.  But what I would say is this, Your

4   Honor.  All they came up with is if you look at the

5   entire sum and substance of their case on reasonable

6   contemplation, there's one paragraph in the

7   supplemental declaration from their counsel.  And all

8   he says is --

9                   HON. BIBAS:  Bruno Poppa.

10                  MR. CLAYTON:  Hmm?

11                  HON. BIBAS:  It's Poppa?

12                  MR. CLAYTON:  Poppa.  Correct.  He says

13  I think we have a case.  He -- and his -- I'll give

14  you the sum and substance of his responses to four

15  cases that are clear which our counsel put in.  We

16  gave -- we translated two of those cases.  And his

17  argument is, number one, he says those cases didn't

18  involve discovery.  Right.  They didn't involve

19  discovery.  They threw the whole case out.

20                  Second -- and I think you heard this

21  from counsel a moment ago.  Counsel said here as they

22  said below and as they said in the briefs, well, those

23  decisions didn't consider the theory that they have

24  that somehow GM Brazil got the benefit of the credit.

25  First of all, it did not.  But let's leave that

1  factual issue aside 'cause it's not in the record.

2  That assertion by Mr. Poppa is clearly demonstrably

3  wrong because when you read the translations of the

4  two opinions that we put in -- and they didn't object

5  to this -- in one case, it's a Brazilian appellate

6  court.  The appellate court says -- the appellate

7  court affirms a finding that rejected proffer of

8  expert evidence on this benefit issue.  In that

9  case --

10              HON. BIBAS:  Your friend on the other

11  side said some of these aren't even from the same

12  court.  They don't involve the same party.  How

13  generalizable is this?

14              MR. CLAYTON:  Well, it's generalizable

15  if -- if they had another court, if they said look the

16  Sao Paulo -- and these are -- I think most of these

17  decisions are from Sao Paulo which is a pretty big

18  place.  If they said, well, Sao Paulo says one thing

19  and Rio de Janeiro says something else, okay.  But

20  here, what they do is, they cite to no statute.  They

21  cite to no opinion.  In other words, all you have to

22  do -- if Brazil's a big place with lots of lawyers,

23  all they have done is, they have their own counsel say

24  I think we have a claim.  And if that's sufficient

25  then this reasonable contemplation --

1                    HON. BIBAS:  I'm sorry.  When the judge

2     has --

3                    HON. FREEMAN:  So --

4                    MR. CLAYTON:  Oh, I'm sorry.

5                    HON. BIBAS:  -- a question, you're

6     supposed to pause.

7                    MR. CLAYTON:  Excuse me.

8                    HON. FREEMAN:  It sounds like you're

9     asking us to look at whether there would be a valid

10    cause of action and whether they have any likelihood

11    of success in Brazil as opposed to whether they

12    contemplate filing suit.  And as we know from domestic

13    court proceedings, people file suit all the time and

14    they reasonably contemplate -- in fact, do file suits

15    when Courts find that there is no valid cause of

16    action and dismiss them.  But Intel doesn't tell us to

17    go any farther than the contemplation.

18                    MR. CLAYTON:  Well, what I would say

19    is, what the Courts do in these circumstances is they

20    look at -- they do look at -- there are many opinions

21    that each side has cited on this.  The Courts actually

22    look at what is the law here.  And here, we have put

23    in that law.  And second, what Courts also look at is

24    the question of delay.  And here, what's striking

25    about this is they, SPS, purchased this credit in the

1  beginning of 2019.  We're coming up on five years to

2  the beginning of 2024 -- they have not brought a

3  proceeding on the merits.  Why?

4              HON. FREEMAN:  The circuit court

5  decisions tell us that we have to look at the -- what

6  -- the legitimacy of their contemplated cause of

7  action.

8              MR. CLAYTON:  The district court here

9  did not look at it.  But I think there are cases, and

10  we've cited them, looking at reasonable contemplation

11  where Courts actually do refuse to apply the statute

12  where the cause of action has no merit.  And here,

13  what has happened is --

14              HON. BIBAS:  Mr. Clayton --

15              MR. CLAYTON:  Sorry.

16              HON. BIBAS:  -- we spent a long -- if

17  my colleagues want to spend --

18              MR. CLAYTON:  I know.  We should go to

19  the discretionary --

20              HON. BIBAS:  -- more time on the

21  threshold, I'm happy to.  Otherwise, I think it would

22  be helpful to walk through the factors and in some

23  order.

24              So, first of all, under Chevron, you

25  don't dispute that it's your side that has the burden

1   to demonstrate facts warranting the denial of the

2   application.  Correct?  So you've got the burden of

3   proof here, right --

4                   MR. CLAYTON:  Well --

5                   HON. BIBAS:  -- under Chevron?

6                   MR. CLAYTON:  -- Your Honor, what I

7   would say is that on the statutory factors, yes.  I

8   think we do.  When it comes to the discretion, I think

9   on discretion, the issue for this Court is we have a

10  clear discretionary ruling.

11                  HON. BIBAS:  Okay.  But did the

12  district court have to hold your client to a burden of

13  proof?

14                  MR. CLAYTON:  I think -- I think the

15  district court -- it makes a discretionary decision --

16                  HON. BIBAS:  Then the district court

17  finds a tie.  Is the district court supposed to say

18  you haven't shown it or they haven't shown it?

19                  MR. CLAYTON:  On the statutory

20  factors --

21                  HON. BIBAS:  On the discretionary

22  factors.

23                  MR. CLAYTON:  On the discretionary

24  factors, Your Honor, first of all, I would say that

25  the burden of proof isn't -- well, I'll put it this

1   way.  Perhaps the burden of proof is on us.  But I

2   have not seen --

3               HON. BIBAS:  I think --

4               MR. CLAYTON:  -- any --

5               HON. BIBAS:  -- Chevron says that.

6   Okay?

7               MR. CLAYTON:  Okay.

8               HON. BIBAS:  So I'm questioning -- the

9   Court, at Appendix 9, said you have the burden to

10  demonstrate facts warranting the denial.

11              MR. CLAYTON:  Okay.

12              HON. BIBAS:  But then when I read pages

13  Appendix 10 and 11, it looks like the Court put that

14  burden on SPS.  It said SPS admits it could obtain the

15  evidence in the discovery proceeding.  It didn't say

16  anything about what GM had shown.  So I'm wondering

17  wouldn't that -- if the Court got the burden of proof

18  wrong, wouldn't that be a legal error that would make

19  its reasoning an abuse of discretion?

20              MR. CLAYTON:  If the Court clearly got

21  the burden of proof wrong, that would definitely go --

22  there were other discretionary factors the Court also

23  looked at.  But, Your Honor, I would respectfully

24  submit that what the district court is doing in the

25  passage that Your Honor referenced is two things.

1    First of all, GM did put in evidence.  We put in

2    evidence.  It was undisputed.  The evidence was, on

3    that first factor, which, as Judge Porter said, looks

4    at jurisdictional reach, there was no dispute.  So

5    when the district court --

6              HON. BIBAS:  Well, wait a second.  Wait

7    a second.  So if the first factor is just about

8    jurisdictional reach, fine.  The entirety of the

9    discussion is one page and it's all about GM Brazil

10   was there and the documents are there.  But the Court

11   says SPS admits the documents are there.  But Intel --

12   there's a paragraph on this on page 264 of Intel.  And

13   it starts by saying is it here.  Is the party here?

14   Is it there?  But the conclusion of that paragraph of

15   Intel is hence, their evidence available to the United

16   States may be unobtainable absent 1782(a) aid?  I don't

17   see reason -- the reasoning is just, you know, the

18   evidence is obtainable there.  But the declarations

19   they cite, if I follow the citations, they cite,

20   Appendix 29, which says GM Brazil's documents aren't

21   anywhere else.  They're all in GM Brazil.  And then

22   that cites over to Bruno Poppa's declaration,

23   paragraph 5, at Appendix 74, which says the documents

24   -- we have the documents.  But it doesn't say anything

25   about whether they're obtainable via discovery

1   processes in Brazil.  Isn't that a legal error for the

2   Court to conflate where the documents are there with

3   whether they're obtainable absent 1782(a)(8)?

4                   MR. CLAYTON:  They are -- first of all,

5   I think with respect -- I think the standard is

6   jurisdictional reach.  And those are the words that

7   Kulzer uses --

8                   HON. BIBAS:  In where?  In Intel?

9                   MR. CLAYTON:  Intel also uses --

10                  HON. BIBAS:  I'm looking at Intel.

11                  MR. CLAYTON:  -- jurisdictional reach.

12  I think it's also -- it's certainly in Kulzer and it's

13  certainly in O'Keeffe.

14                  HON. BIBAS:  Okay.  I'm looking at

15  Intel.  And Intel's focus is what's unreach -- what is

16  obtain -- unobtainable absent the aid --

17                  MR. CLAYTON:  What --

18                  HON. BIBAS:  -- not jurisdictional

19  reach.

20                  MR. CLAYTON:  What I'm looking at in

21  Intel on 264 when it's discussing the first factor --

22                  HON. BIBAS:  Okay.

23                  MR. CLAYTON:  -- after the citation to

24  reply brief.  It says can itself -- a foreign tribunal

25  has jurisdiction over those appearing before it and

1   can itself order them to produce evidence.  And

2   there's a citation.  And the citation includes "can

3   exercise" -- it's quoting, I think, Smitt (ph) -- "can

4   exercise its own jurisdiction to order production of

5   the evidence".  And that is why the cases including

6   the Third Circuit cases like Kulzer speak in terms of

7   jurisdictional reach.  And what happened here is that

8   there are clear statements which the district court

9   knew all about in which -- in Poppa's declaration and

10  in their papers below, they say -- in fact, there's a

11  statement which I think the district court may cite

12  where Mr. Poppa says, well, the party who -- it is GM

13  Brazil and its advisors --

14              HON. BIBAS:  Okay.

15              MR. CLAYTON:  -- who have all this

16  evidence.

17              HON. BIBAS:  But when I look at --

18              MR. CLAYTON:  There was no --

19              HON. BIBAS:  -- Appendix --

20              MR. CLAYTON:  -- dispute on this issue.

21              HON. BIBAS:  The reasoning at the

22  bottom of Appendix 10 is "Here, even if GM's financial

23  statements include the information...SPS can obtain

24  the same information in the pending foreign court

25  proceeding".

1                    MR. CLAYTON:  Yes.

2                    HON. BIBAS:  But that is a misreading

3    of Poppa's declaration which does not say it can get

4    it.  It's (indiscernible) in Brazil but it may not be

5    able to get it given the nature of the Brazilian

6    discovery proceeding limitations.

7                    MR. CLAYTON:  I believe, Your Honor,

8    that it is a correct reading because what Intel is

9    saying and what Kulzer and O'Keefe say is does that

10   Court -- does that foreign court have the

11   jurisdictional powers.  Intel says does it have -- can

12   it exercise its own jurisdiction to order production

13   of the evidence.  And --

14                   HON. BIBAS:  Okay.  But that's --

15                   MR. CLAYTON:  And that is true here.

16   And they conceded it.

17                   HON. BIBAS:  That was not ultimately

18   the district court's reasoning.  At the end, it

19   reasoned it can get it there not just they have

20   jurisdiction there.

21                   MR. CLAYTON:  I --

22                   HON. BIBAS:  And that appears to be a

23   misreading of the declaration it's citing and the

24   Brazilian law.

25                   MR. CLAYTON:  First of all, they -- at

1    the time the district court acted --

2                    HON. BIBAS:  Okay.

3                    MR. CLAYTON:  First of all, at the time

4    the district court acted, what the situation was, was

5    SPS was asserting in Brazil that those materials were

6    available.  Indeed, they were arguing that GM should

7    have already produced them.

8                    HON. BIBAS:  All right.  You're not

9    answering.  Let's move on to the second factor.

10                    HON. PORTER:  Well, wait.  What would

11    be the purpose of having 1782 if the documents in the

12    foreign tribunal could always be got, could always be

13    obtained?  If the only standard or test is you're not

14    getting what you want from the Brazilian court even

15    though it's obtainable there, then you can come get

16    1782 relief.  I'm not sure what 1782 is doing.

17                    MR. CLAYTON:  Well, what it -- it does

18    a lot of work.  What it does is, for example, in the

19    traditional case, there's material within the

20    jurisdictional reach of the United States and not

21    within the jurisdictional reach of another court.

22                    HON. BIBAS:  All right.  But --

23                    MR. CLAYTON:  And you get that

24    information.  That's most of the work that it does.

25                    HON. BIBAS:  Sir, those are the

1    arguments that were made in Intel, the losing

2    arguments, that you should graft an exhaustion

3    requirement on because it's kind of logical to have an

4    exhaustion requirement to avoid duplicating.  But the

5    majority and then even more emphatically, Justice

6    Scalia said maybe it's logical but the text doesn't

7    require that.  So I think what you're arguing seems

8    very practical.  I just don't see what tells us as

9    judges to limit the statute that way.

10                   MR. CLAYTON:  Well, here's what I think

11   is going on, Your Honor.  And on the exhaustion point,

12   they argue that Judge Connolly was imposing an

13   improper exhaustion requirement.  This is the opposite

14   of exhaustion.  In exhaustion, what happens is someone

15   starts a 1782 provision -- proceeding in the United

16   States and the Court says no.  Before I even listen to

17   you, go seek these documents somewhere else.  That's

18   exhaustion.

19                   That's not what happened here.  What

20   happened here was a choice.  And what's really going

21   on is Judge Connolly is looking at the situation and

22   he says this is a proceeding which is -- it's a

23   tactical filing to bring parallel proceedings for the

24   same discovery.  And they conceded when we put in --

25   if you look at the list of documents they're

1   requesting in Brazil and the list of documents in the
2   United States, there's complete --
3                    HON. BIBAS:  Mr. --
4                    MR. CLAYTON:  -- overlap.
5                    HON. BIBAS:  Mr. Clayton --
6                    MR. CLAYTON:  Yeah.
7                    HON. BIBAS:  Okay.  You're very
8   longwinded.  Could we just get some answers here.
9   Let's go on to the second Intel factor.
10                   MR. CLAYTON:  Okay.
11                   HON. BIBAS:  Didn't Judge Connolly,
12  Chief Judge Connolly, excellent jurist but
13  misunderstand the second Intel factor?  He equated the
14  character of the foreign proceeding as to whether you
15  can get the evidence in the foreign proceeding.  But
16  Intel talks about whether it's admissible.  Would you
17  be able to admit it if we got it?
18                   Here, the concern is would they receive
19  the evidence if you wound up producing it not whether
20  you could go get it in Brazil.  So didn't Chief Judge
21  Connolly misunderstand the second Intel factor?
22                   MR. CLAYTON:  I don't think so because
23  I think if you look at Intel, the second factor is a
24  broad factor that looks at -- and here, I'm farther
25  down on, I think, the same page we were looking at

1  before.  It says "The Court may take into account
2  the nature of the foreign tribunal" -- not really a
3  question here -- "the character of the proceedings
4  underway abroad and the receptivity [to]...judicial
5  assistance."  Those are different factors.  And what's
6  happening here is, I think -- and Judge Connolly, I
7  think, is making this clear.  He's saying what's
8  happening in Brazil.  The character of that proceeding
9  is a discovery proceeding.  That's all that it's
10  about.  And what he's saying is there are two possible
11  outcomes in that discovery proceeding.  He's not
12  making any finding that I can see that's going to
13  receptivity because he's looking at the character of
14  the proceedings.  And he says either they're
15  duplicative if they win or, if they don't win, it's
16  circumvention.
17          HON. BIBAS:  Okay.  Duplicative -- that
18  does start to sound like an exhaustion requirement.
19          MR. CLAYTON:  No, because I think the
20  issue with exhaustion is here what we have is a
21  choice.  In other words, if they had come in to the
22  United States without filing any Brazilian proceeding
23  on discovery and Judge Connolly had said go away, go
24  to Sao Paulo before I even listen to you, that's
25  exhaustion.  What he said here was you've been

1  litigating for a year, basically -- well, it was many

2  months at that point -- in Brazil asking the Brazilian

3  court to do just what you want me to do.  GM had

4  already produced the spreadsheet showing the credit.

5  And it had already produced all the papers in the

6  litigation there.  And he said I want -- you, SPS --

7              HON. BIBAS:  All right.  Thank you very

8  much.

9              MR. CLAYTON:  Okay.  Thank you, Your

10 Honor.

11             MS. SCANLON:  Your Honors, I would like

12 to call your attention that Appellee not once said

13 they don't have possession, custody or control of

14 these documents.  They keep on and on talking about,

15 oh, those are in Brazil, those are in Brazil.  Here,

16 in O'Keeffe, mentioning John Deere and Bayer, we have

17 never held that an applicant must seek discovery

18 relief in the foreign forum first.  For example, in

19 Bayer, we rejected the argument that an application

20 should be denied when the applicant could have gone to

21 the foreign court to seek production of the materials.

22             HON. PORTER:  All right.  So there's no

23 exhaustion requirement.

24             MS. SCANLON:  Yes.

25             HON. PORTER:  But when you are seeking

1   the information that is obtainable in Brazil and

2   you're not getting all of the relief that you want, is

3   1782 a proper vehicle to try to get around that

4   problem?

5                 MS. SCANLON:  Your Honor, we're not

6   trying to get around anything because in the discovery

7   proceeding, as Bruno Poppa mentioned in his

8   declaration, there's a limited discovery proceeding.

9   The Court twice -- twice granted SPS' request.  And it

10  just states we don't have the power to compel.  They

11  only produced the spreadsheet and guess what?  The

12  spreadsheet doesn't show the credits.  It doesn't show

13  what we need.  Why was not everything produced?  We

14  don't know.  They don't want to produce.

15                And let's say, just in theory, that

16  this same discovery could be obtained in a future

17  proceeding, in a future merits proceeding.  Will it be

18  obtained if they twice -- if General Motors Brazil

19  twice said we're not going to produce?  And in fact,

20  when we're talking about -- when counsel came here and

21  said that Mr. Poppa did not talk about the cause of

22  action, well, in his first declaration, Your Honor, we

23  have here an entire section saying SPS' cause of

24  action against General Motors Brazil.  And it's over

25  four pages.  And stating that we don't have a cause of

1  action -- again, twice we went to the court in Brazil.

2  Twice we got the request to be produced and they did

3  not produce.  The proper use of Section 1782.  If

4  we -- if this Court does not abide by all the cases in

5  the past concern -- even in Chevron, the same exact

6  factor.  This is the proper use of Section 1782.

7  Efficient and also United States has to be the

8  guardian and lead by example.

9           HON. BIBAS:  I'd like -- yeah.  Please

10  go on.

11           MS. SCANLON:  Okay.  So here, as I

12  mentioned before -- I know that my time is running but

13  I just want to make one general assessment.

14           As I look at the general eagle, the

15  symbol of the United States -- and, of course, you

16  know, I come here today seeking justice.  And I hear

17  everyone who comes to this Court seeking justice here.

18  I urge this Court to use its arrows to

19  maintain its peace in over 40 -- almost 40

20  years of good precedent in Section 1782 including

21  Intel.

22           Here, SPS not only meets all the

23  statutory requirements, all of it, and also the

24  discretionary factors of Intel, all weigh for SPS.

25  General Motors is not in Brazil.  It's not within the

1   Brazilian jurisdiction of the Court.  General Motors

2   United States even states in its published financial

3   statements that the specific line item for Brazil --

4   they have possession, control of these documents.  And

5   in Brazil, the very administrative proceeding is under

6   seal.  Why is it under seal?  And why they haven't

7   produced the evidence?

8               Your Honors, I urge you to consider the

9   facts of this case.  And again, the second Intel

10  factor, receptivity from the courts, that is the

11  burden on them.  And they haven't met.  They just

12  throw decisions -- four decisions and one.

13  It's from the São Caetano do Sul court.  It's not even

14  from Sao Paulo and don't concern SPS at all.

15              HON. BIBAS:  What about the two he said

16  that they provided that they had translated?  Why

17  shouldn't we read those as they do?

18              MS. SCANLON:  Well, Your Honor, if you

19  look at Appendix page 240 and 234 -- and apologies --

20  they may have been on the Portuguese side.  But you

21  will see that the cause of action is different.  These

22  decisions have both.  Both of these decisions were

23  decided by August 2020.  Even before -- or in the

24  middle when SPS started its preliminary discovery

25  proceeding.  And those decisions concern other

1    dealerships and the dealerships wanted the Court to

2    estimate precisely the amount of the credit.  That is

3    not what SPS wants to do in this contemplated

4    proceeding.  It's another thesis.  That's why we're

5    being very careful enough not to go on the rabbit

6    route that others have gone through.  We're not asking

7    the Brazilian court in the proceeding and the merits

8    proceeding that SPS will file -- estimate the amount.

9    No.  We want to know whether they had economic

10   benefits to know the precise amount.  And that's what

11   he says in this paragraph 5.

12             HON. BIBAS:  All right.  Thank you,

13   counsel.

14        (Pause)

15             HON. BIBAS:  Okay.  We thank both sides

16   for their excellent briefing and argument.  We'd ask

17   that the parties work together to prepare a

18   transcript.

19             We would also ask that each side,

20   within seven days, say, by Monday, December 18th at

21   noon, submit a three-page single-spaced supplemental

22   letter brief limited to the issue of whether the

23   statutory factors are jurisdictional or not under

24   1782.  And the case is submitted.

25             And we'll go off the record and we'd

1    like to greet counsel at sidebar.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3              A R G U M E N T

4

5   PARTY                                    PAGE

6   Ms. Scanlon (for Appellant)               3

7   Mr. Clayton (for Appellee)               14

8   Ms. Scanlon (for Appellant - rebuttal)   31

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        1            C E R T I F I C A T I O N

2        2

3        3    I, Lisa Beck, certify that the foregoing transcript is

4        4    a true and accurate record of the proceedings.

5        5

6        6
              Lisa Beck

7        7

8        8

9        9

10       10

11       11

12            Date:  December 21, 2023

         12

13

         13

14

         14

15

         15

16

         16

17

         17

18

         18

19

         19

20

         20

21

         21

22

         22

23

         23

24

         24

25

         25

| & | | | |
|---|---|---|---|
| **&** | **19103** 1:24 | **5** | **acted** 27:1,4 |

**&**

**&** 2:8

**0**

**00565** 1:11

**1**

**1** 38:1
**10** 22:13 25:22
  38:10
**10019** 2:9
**102** 2:5
**11** 1:6 22:13
  38:11
**12** 38:12
**1285** 2:9
**13** 38:13
**14** 37:7 38:14
**15** 38:15
**16** 38:16
**17** 38:17
**1782** 3:8,9,21
  3:24 6:2,5 11:3
  11:16,19 12:7
  12:11 13:8
  14:21 23:16
  24:3 27:11,16
  27:16 28:15
  32:3 33:3,6,20
  35:24
**18** 38:18
**1800** 1:24
**1801** 1:23
**18th** 35:20
**19** 38:19

**19103** 1:24
**1:21** 1:11
**1st** 2:4 4:20

**2**

**2** 38:2
**20** 38:20
**20016** 2:5
**2019** 6:9 20:1
**2020** 34:23
**2022** 4:21
**2023** 1:6 38:12
**2024** 16:11
  20:2
**21** 38:12,21
**22** 38:22
**22-3331** 1:3
**23** 38:23
**234** 34:19
**24** 38:24
**240** 34:19
**25** 38:25
**264** 23:12
  24:21
**29** 23:20

**3**

**3** 37:6 38:3
**31** 37:8
**320** 4:23

**4**

**4** 38:4
**40** 33:19,19
**4301** 2:4

**5**

**5** 23:23 35:11
  38:5
**50th** 2:4

**6**

**6** 38:6

**7**

**7** 38:7
**74** 23:23
**777-6690** 1:25

**8**

**8** 24:3 38:8
**888** 1:25

**9**

**9** 22:9 38:9
**9:30** 1:5

**a**

**a.m.** 1:5
**abide** 33:4
**able** 4:3 26:5
  29:17
**abroad** 9:22
  11:21,22 30:4
**absent** 23:16
  24:3,16
**abuse** 16:16
  22:19
**accept** 13:17
**accordance**
  10:15
**account** 30:1
**accurate** 38:4

**acted** 27:1,4
**action** 6:17,19
  6:23 7:11,13
  10:14 15:6,25
  16:8 19:10,16
  20:7,12 32:22
  32:24 33:1
  34:21
**actual** 5:12
  6:20 7:24 8:20
**actually** 8:19
  11:25 19:21
  20:11
**addition** 15:7
**address** 10:7
**addressed** 9:18
**administrative**
  5:8 34:5
**admissible**
  29:16
**admit** 29:17
**admits** 22:14
  23:11
**advantage** 7:22
**advisors** 25:13
**advocated** 9:16
**affirms** 18:7
**ago** 17:21
**aid** 23:16 24:16
**aims** 13:8
**allowing** 8:10
**american** 12:22
**americas** 2:9
**amount** 5:12,17
  7:18,25 35:2,8

35:10
**answering** 27:9
**answers** 29:8
**apologies** 34:19
**appeal** 1:9 7:16 9:17
**appeals** 1:1
**appearances** 1:17 2:1
**appearing** 24:25
**appears** 26:22
**appellant** 1:5 2:2 37:6,8
**appellant's** 3:7
**appellate** 1:13 18:5,6,6
**appellee** 1:8 2:7 6:15 14:2 31:12 37:7
**appendix** 4:7 4:23 6:18 22:9 22:13 23:20,23 25:19,22 34:19
**applicant** 1:5 31:17,20
**applicants** 3:14 3:23
**application** 3:8 21:2 31:19
**applied** 3:23
**apply** 20:11
**approach** 3:22
**appropriate** 8:5

**argue** 28:12
**argued** 2:3,8
**arguing** 27:6 28:7
**argument** 17:17 31:19 35:16
**arguments** 28:1,2
**arianna** 1:15
**arrows** 33:18
**aside** 18:1
**asking** 19:9 31:2 35:6
**asserting** 27:5
**assertion** 18:2
**assessment** 33:13
**assistance** 30:5
**assume** 5:4
**attention** 31:12
**august** 34:23
**authoritative** 10:5
**authorities** 16:1
**authorized** 8:3 8:6
**available** 11:21 11:22 23:15 27:6
**avenue** 2:9
**avoid** 28:4

**b**

**back** 7:25 13:24 15:9
**based** 7:21
**basically** 31:1
**bayer** 3:17 8:16 9:13,14 10:19 10:20 13:4 31:16,19
**beck** 38:3,6
**beginning** 20:1 20:2
**believe** 8:5,6 26:7
**benefit** 6:20 7:3 8:1 17:24 18:8
**benefits** 5:11 35:10
**betachem** 9:17
**beyond** 8:23
**bibas** 1:14 3:6 3:25 4:20,23 5:19 13:20,23 14:5,12,16 16:13,22,25 17:9,11 18:10 19:1,5 20:14 20:16,20 21:5 21:11,16,21 22:3,5,8,12 23:6 24:8,10 24:14,18,22 25:14,17,19,21 26:2,14,17,22 27:2,8,22,25

29:3,5,7,11 30:17 31:7 33:9 34:15 35:12,15
**big** 18:17,22
**biomet** 3:18 8:16,21 9:19
**bottom** 25:22
**brazil** 4:9,17 5:2,5,10,15,18 6:3,13 7:6,22 8:12 10:1 11:23,25 12:1 12:4,8 15:2 16:5,11,12 17:24 19:11 23:9,21 24:1 25:13 26:4 27:5 29:1,20 30:8 31:2,15 31:15 32:1,18 32:24 33:1,25 34:3,5
**brazil's** 18:22 23:20
**brazilian** 4:1 4:13,19 6:23 12:15,21,21 16:7 18:5 26:5 26:24 27:14 30:22 31:2 34:1 35:7
**brief** 14:25 24:24 35:22

briefed  14:7
briefing  14:20
  35:16
briefs  6:15
  10:12 17:22
bring  15:2
  28:23
broad  8:4 9:4
  14:3 29:24
brought  20:2
bruno  17:9
  23:22 32:7
built  3:16
burden  10:1
  20:25 21:2,12
  21:25 22:1,9
  22:14,17,21
  34:11

**c**

c  3:1 38:1,1
caetano  34:13
call  31:12
car  7:19
care  13:12,14
careful  35:5
case  1:3,11
  3:16 10:9
  15:18,23 17:5
  17:13,19 18:5
  18:9 27:19
  34:9 35:24
cases  7:1,4,5,7
  15:24 16:7
  17:15,16,17
  20:9 25:5,6

33:4
cause  6:19,22
  7:13 15:5,25
  16:7 18:1
  19:10,15 20:6
  20:12 32:21,23
  32:25 34:21
causes  6:17
  7:11 10:14
caution  4:11
certain  9:3,4
certainly  24:12
  24:13
certify  38:3
cfc  1:11
character
  29:14 30:3,8
  30:13
chevron  3:17
  8:16 10:22
  12:23 13:5,5
  13:12,17 20:24
  21:5 22:5 33:5
chief  1:11
  29:12,20
choice  28:20
  30:21
circuit  1:1,14
  1:15,15 3:22
  10:15 20:4
  25:6
circumstances
  19:19
circumvention
  30:16

citation  24:23
  25:2,2
citations  23:19
cite  15:23 18:20
  18:21 23:19,19
  25:11
cited  19:21
  20:10
cites  15:25
  23:22
citing  26:23
claim  7:2,3
  15:5 18:24
clayton  2:8
  14:1,2,8,13,24
  15:10,13,15,20
  15:22 16:20,23
  17:2,10,12
  18:14 19:4,7
  19:18 20:8,14
  20:15,18 21:4
  21:6,14,19,23
  22:4,7,11,20
  24:4,9,11,17,20
  24:23 25:15,18
  25:20 26:1,7
  26:15,21,25
  27:3,17,23
  28:10 29:4,5,6
  29:10,22 30:19
  31:9 37:7
clear  17:15
  21:10 25:8
  30:7

clearly  18:2
  22:20
client  5:21
  21:12
colleagues
  20:17
colm  1:11
come  11:9
  27:15 30:21
  33:16
comes  15:24
  21:8 33:17
coming  20:1
company  1:7
  1:23 12:2
compel  4:9,16
  32:10
compelling
  12:11
complete  29:2
complied  11:12
comply  12:11
complying  12:9
concede  16:2
conceded  26:16
  28:24
concern  7:5,5
  10:13 29:18
  33:5 34:14,25
concerning
  3:20 7:10
concerns  6:16
  6:17 9:9
conclusion
  23:14

conclusory 3:10

conflate 24:2

congress 3:22

connolly 1:11
28:12,21 29:11
29:12,21 30:6
30:23

consider 17:23
34:8

contemplate 19:12,14

contemplated
5:20 6:5,11,18
9:2 16:19 20:6
35:3

contemplating 6:22

contemplation
15:1,3 17:6
18:25 19:17
20:10

content 4:12

control 31:13
34:4

corp 1:3

correct 7:18
11:5 17:12
21:2 26:8

correctly 14:10

counsel 6:9
17:7,15,21,21
18:23 32:20
35:13 36:1

country's 10:5

course 6:21
33:15

court 1:1,10,23
3:17,23 7:9,17
8:7,8,17,22
9:21 10:1,10
10:10,24,24
12:10,14 13:13
13:15,16 14:1
14:10 16:16,21
16:23 18:6,6,7
18:12,15 19:13
20:4,8 21:9,12
21:15,16,17
22:9,13,17,20
22:22,24 23:5
23:10 24:2
25:8,11,24
26:10,10 27:1
27:4,14,21
28:16 30:1
31:3,21 32:9
33:1,4,17,18
34:1,13 35:1,7

court's 3:10,11
3:15,18 12:25
16:18 26:18

courts 7:16 8:3
9:13,18 12:15
12:21 14:4
16:7 19:15,19
19:21,23 20:11
34:10

credit 5:11 7:19
16:9 17:24
19:25 31:4
35:2

credited 5:17

creditorios 3:3

credits 6:20
7:23,24,25
32:12

creditórios 1:4

cursory 3:10

custody 31:13

**d**

d 3:1 37:1

date 11:12
38:12

david 1:15

days 35:20

dc 2:5

de 1:3 3:2 7:12
18:19

dealer 16:5

dealers 16:5

dealerships
7:19 35:1,1

decades 3:16

december 1:6
35:20 38:12

decide 8:4

decided 34:23

decision 3:19
4:1,6,6,8,12,12
4:21 9:4 21:15

decisions 3:21
4:8 10:12 16:3

16:4 17:23
18:17 20:5
34:12,12,22,22
34:25

declarant 7:14
12:1

declaration 6:7
6:8,8 7:8 17:7
23:22 25:9
26:3,23 32:8
32:22

declarations
10:6 23:18

deere 3:17
31:16

defer 16:16,17
17:3

deference 17:1

definitely 22:21

delaware 1:10

delay 19:24

demonstrably
18:2

demonstrate
21:1 22:10

denial 21:1
22:10

denied 10:25
13:13 31:20

denies 8:22

describes 7:14

difference
10:22,23

different 3:13
6:14,16,17 7:6

7:10,11,16
10:13,14 30:5
34:21
**diligent** 6:12
**direitos** 1:4 3:3
**discovery** 5:15
6:12 8:3,6,10
9:12,20,21
11:3,13,15,17
11:20,21 12:8
12:12,14,25
13:6,13,16
16:10 17:18,19
22:15 23:25
26:6 28:24
30:9,11,23
31:17 32:6,8
32:16 34:24
**discretion** 8:4
14:3,6,10
16:17 21:8,9
22:19
**discretionary**
3:12 14:18
20:19 21:10,15
21:21,23 22:22
33:24
**discussed** 13:18
**discussing**
24:21
**discussion** 23:9
**dismiss** 5:25
19:16
**dismissed** 7:1

**dispute** 11:16
11:17 16:10
20:25 23:4
25:20
**disregard** 3:21
**dissatisfied**
12:7
**district** 1:10,10
1:11 3:10,15
3:18 8:3,7,8,17
9:20 10:10,10
14:4,4,9 16:16
16:18,21,23
20:8 21:12,15
21:16,17 22:24
23:5 25:8,11
26:18 27:1,4
**documents**
4:10,18,24 5:1
5:6,9 23:10,11
23:20,23,24
24:2 27:11
28:17,25 29:1
31:14 34:4
**doing** 22:24
27:16
**domestic** 19:12
**duplicating**
28:4
**duplicative**
30:15,17

e

**e** 3:1,1 37:1,3
38:1

**eagle** 33:14
**early** 4:2,3
**economic** 5:11
6:20 7:2,22 8:1
35:9
**ecuadorian**
13:13
**edna** 4:21
**effective** 13:10
**efficient** 13:9
33:7
**either** 30:14
**element** 15:14
**em** 1:4 3:3
**embracing** 3:13
**emphatically**
28:5
**enhance** 9:5
**entire** 17:5
32:23
**entirety** 4:10
4:15,17,25
23:8
**entitled** 7:24
**equated** 29:13
**error** 22:18
24:1
**esq** 2:3,8
**establish** 7:17
**estimate** 35:2,8
**evaluating** 6:10
**evidence** 4:15
6:4,13 8:12 9:5
10:2,7 11:24
18:8 22:15

23:1,2,2,15,18
25:1,5,16
26:13 29:15,19
34:7
**exact** 8:12 33:5
**exactly** 7:19
**example** 3:8
13:11 15:24
27:18 31:18
33:8
**examples** 10:4
**excellent** 29:12
35:16
**excuse** 19:7
**executive** 10:6
**exercise** 25:3,4
26:12
**exercised** 14:10
**exhaust** 9:12
**exhaustion**
9:16,20 11:20
28:2,4,11,13,14
28:14,18 30:18
30:20,25 31:23
**expert** 18:8
**expressly** 8:22

f

**f** 1:11 38:1
**facie** 16:14
**fact** 5:10 6:7
9:3 10:19 11:1
11:22 19:14
25:10 32:19
**factor** 3:16 9:9
9:23,24 12:19

13:4 23:3,7
24:21 27:9
29:9,13,21,23
29:24 33:6
34:10
**factors** 3:12,14
5:19 8:7 9:8
14:6,11 20:22
21:7,20,22,24
22:22 30:5
33:24 35:23
**facts** 21:1
22:10 34:9
**factual** 18:1
**fair** 16:21
**far** 3:19
**farther** 19:17
29:24
**favorable** 4:8
**fazer** 7:12
**figure** 5:22
**file** 4:3 5:22
6:12,24 19:13
19:14 35:8
**filed** 5:21
**filing** 19:12
28:23 30:22
**financial** 12:3
25:22 34:2
**find** 19:15
**finding** 5:14
18:7 30:12
**finds** 21:17
**fine** 23:8

**first** 6:8 9:9,22
11:12 12:19
13:3 14:9,19
16:20 17:25
20:24 21:24
23:1,3,7 24:4
24:21 26:25
27:3 31:18
32:22
**five** 20:1
**floor** 2:4
**focus** 24:15
**follow** 23:19
**foregoing** 38:3
**foreign** 3:14,23
6:9 9:6,11,12
9:19 10:8,17
10:21,24,24
11:19 12:14
13:10 15:12
24:24 25:24
26:10 27:12
29:14,15 30:2
31:18,21
**forum** 10:5
11:4 31:18
**four** 3:4,16
6:14 7:1 10:12
13:24 16:3
17:14 32:25
34:12
**fraction** 5:15
**freeman** 1:15
8:2 19:3,8 20:4

**friend** 18:10
**frustrated** 12:9
**full** 5:16
**fundo** 1:3 3:2
**funds** 9:3,4
**future** 32:16,17

**g**

**g** 3:1 37:3
**gabriela** 2:3
**garrison** 2:8
**gathered** 10:7
**gathering**
10:18,21
**general** 1:7 4:9
4:14,17 5:5,8
5:10,17 7:6,21
8:19 9:10
11:22 12:1,4
12:20 13:1
14:2 32:18,24
33:13,14,25
34:1
**generalizable**
18:13,14
**getting** 9:6
27:14 32:2
**ginsburg** 10:19
**give** 17:13
**given** 11:8 14:3
26:5
**gives** 14:15
**giving** 12:16
**gm** 5:1 11:9
16:5,5,11,12
17:24 22:16

23:1,9,20,21
25:12 27:6
31:3
**gm's** 25:22
**go** 4:3 19:17
20:18 22:21
28:17 29:9,20
30:23,23 33:10
35:5,25
**going** 6:2 14:10
15:19 16:12
28:11,20 30:12
32:19
**good** 33:20
**graft** 28:2
**granted** 3:6
11:1 32:9
**greet** 36:1
**grounds** 7:21
**guardian** 33:8
**guess** 12:6
32:11

**h**

**happened**
10:25 20:13
25:7 28:19,20
**happening** 30:6
30:8
**happens** 28:14
**happy** 20:21
**hear** 13:23
33:16
**heard** 17:20
**held** 31:17

**helpful** 20:22
**hmm** 17:10
**hold** 21:12
**holds** 3:19
**hon** 1:11,14,15
 1:15 3:6,25
 4:20,23,24
 5:19 6:25 8:2
 11:2,7,15 12:6
 12:24 13:20,22
 13:23 14:5,12
 14:16 15:9,11
 15:14,16,21
 16:13,22,25
 17:9,11 18:10
 19:1,3,5,8 20:4
 20:14,16,20
 21:5,11,16,21
 22:3,5,8,12
 23:6 24:8,10
 25:14,17,19,21
 26:2,14,17,22
 27:2,8,10,22,25
 29:3,5,7,11
 30:17 31:7,22
 31:25 33:9
 34:15 35:12,15
**honor** 4:5,22
 6:1 7:4 8:14
 9:24 11:11,18
 12:18 13:4
 14:24 17:4
 21:6,24 22:23
 22:25 26:7

 28:11 31:10
 32:5,22 34:18
**honors** 3:4,7
 5:5 31:11 34:8

**i**

**identically** 16:6
**importance**
 5:12
**important** 6:21
 10:20 13:17
**imposing** 28:12
**improper** 28:13
**inappropriate**
 3:13
**include** 7:2
 10:5 11:24
 25:23
**includes** 9:15
 25:2
**including** 25:5
 33:20
**inconsistent**
 8:13,15,16
**indiscernible**
 26:4
**information**
 4:2 11:4,10
 25:23,24 27:24
 32:1
**intel** 3:11 8:2,7
 8:13,15 9:8,9
 9:23,24 10:18
 10:18 12:19
 13:3,4 19:16
 23:11,12,15

 24:8,9,10,15,21
 26:8,11 28:1
 29:9,13,16,21
 29:23 33:21,24
 34:9
**intel's** 24:15
**interested** 8:24
 8:25
**interpretation**
 3:12
**investimento**
 1:4 3:2
**involve** 16:4,4
 17:18,18 18:12
**involved** 7:7
**ipi** 5:11 6:20
 7:18,23
**issue** 11:16
 13:12,18 14:25
 16:20 18:1,8
 21:9 25:20
 30:20 35:22
**issues** 9:12
**item** 34:3

**j**

**j** 1:15,15
**janeiro** 18:19
**john** 3:17 31:16
**judge** 1:11,14
 1:15,15 4:14
 9:15 10:10,19
 19:1 23:3
 28:12,21 29:11
 29:12,20 30:6
 30:23

**judges** 28:9
**judgment**
 16:18
**judicial** 10:5
 30:4
**july** 16:11
**jurisdiction**
 5:25 7:10
 12:22 13:2
 14:22,23 24:25
 25:4 26:12,20
 34:1
**jurisdictional**
 5:24 11:5
 12:13,15 13:1
 13:7 14:7,11
 14:12,14,17,18
 15:4,17 23:4,8
 24:6,11,18
 25:7 26:11
 27:20,21 35:23
**jurist** 29:12
**justice** 28:5
 33:16,17

**k**

**kano** 4:21
**keep** 31:14
**kills** 6:4
**kind** 9:16 28:3
**knew** 25:9
**know** 12:3
 13:19 16:14
 19:12 20:18
 23:17 32:14
 33:12,16 35:9

35:10
**kulzer** 24:7,12
25:6 26:9
**kyoko** 4:21

**l**

**lack** 5:25 7:1
**law** 3:16 4:19
6:23 19:22,23
26:24
**lawyer** 15:25
**lawyers** 18:22
**lead** 33:8
**leave** 17:25
**legal** 22:18
24:1
**legislative** 10:6
**legitimacy** 20:6
**letter** 35:22
**lew** 14:2
**lewis** 2:8
**liability** 12:2
**liberal** 3:21
**likelihood**
19:10
**limit** 28:9
**limitations**
26:6
**limited** 5:15
12:2 32:8
35:22
**line** 34:3
**lined** 15:18
**lisa** 38:3,6
**list** 28:25 29:1

**listen** 28:16
30:24
**litigants** 13:10
**litigating** 31:1
**litigation** 13:9
31:6
**logical** 28:3,6
**long** 20:16
**longwinded**
29:8
**look** 8:23 9:25
10:18 12:23
17:4 18:15
19:9,20,20,22
19:23 20:5,9
25:17 28:25
29:23 33:14
34:19
**looked** 22:23
**looking** 8:11
10:17 20:10
24:10,14,20
28:21 29:25
30:13
**looks** 22:13
23:3 29:24
**losing** 28:1
**lot** 27:18
**lots** 18:22
**lucas** 7:8

**m**

**m** 37:3
**m.b.** 2:3
**made** 16:14
28:1

**maintain** 33:19
**majority** 28:5
**make** 22:18
33:13
**makes** 21:15
**making** 12:8
30:7,12
**markedly** 3:11
**market** 1:23
**material** 27:19
**materials** 27:5
31:21
**matters** 8:9
**mb** 2:3
**mc** 1:11
**mean** 14:21
16:16
**meaning** 9:25
**mechanism**
8:10
**meets** 33:22
**mention** 10:12
**mentioned** 7:3
7:8 32:7 33:12
**mentioning**
31:16
**mentions** 6:15
10:19,23
**merit** 20:12
**merits** 6:3
13:15 20:3
32:17 35:7
**met** 8:19 34:11
**middle** 34:24

**minutes** 3:4
13:24
**misapplied** 8:7
**misreading**
26:2,23
**misunderstand**
29:13,21
**modest** 16:14
**moment** 17:21
**monday** 35:20
**months** 31:2
**motor** 12:4
**motors** 1:7 4:9
4:15,17 5:5,8
5:10,17 7:6,22
8:19 9:10
11:22 12:1,20
13:1 14:2
32:18,24 33:25
34:1
**move** 27:9

**n**

**n** 3:1 37:1,3
38:1
**nao** 3:3
**national** 1:23
**nature** 26:5
30:2
**nearly** 3:16
**need** 11:3,9
32:13
**neither** 14:6
**never** 31:17
**new** 2:9

| | | | |
|---|---|---|---|
| **noon** 35:21 | **ones** 14:18 | **parallel** 8:10 | **please** 14:1 |
| **nothing's** 5:21 | **opinion** 3:10,15 | 28:23 | 33:9 |
| **number** 6:16 | 18:21 | **part** 7:8 11:7 | **point** 4:16 5:5 |
| 8:17 9:9 17:17 | **opinions** 18:4 | 11:24 | 10:3 28:11 |
| **nw** 2:4 | 19:20 | **participant** | 31:2 |
| **ny** 2:9 | **opposed** 19:11 | 9:11 12:20 | **poppa** 7:13 |
| **não** 1:4 | **opposite** 15:23 | **parties** 35:17 | 17:9,11,12 |
| **o** | 28:13 | **party** 18:12 | 18:2 25:12 |
| **o** 3:1 38:1 | **order** 5:22 | 23:13 25:12 | 32:7,21 |
| **o'keefe** 26:9 | 20:23 25:1,4 | 37:5 | **poppa's** 6:7 |
| **o'keeffe** 3:17 | 26:12 | **passage** 22:25 | 23:22 25:9 |
| 8:16 9:13,18 | **outcomes** 30:11 | **past** 10:16 33:5 | 26:3 |
| 10:3 24:13 | **overlap** 29:4 | **paul** 2:8 | **porter** 1:15 |
| 31:16 | **overwhelming** | **paulo** 7:9,16 | 4:24 6:25 11:2 |
| **object** 18:4 | 16:1,2 | 18:16,17,18 | 11:7,15 12:6 |
| **obligation** 7:12 | **own** 18:23 25:4 | 30:24 34:14 | 12:24 13:22 |
| **obrigação** 7:12 | 26:12 | **pause** 19:6 | 15:9,11,14,16 |
| **obtain** 22:14 | **p** | 35:14 | 15:21 23:3 |
| 24:16 25:23 | **p** 3:1 | **pay** 16:12 | 27:10 31:22,25 |
| **obtainable** | **pa** 1:24 | **peace** 33:19 | **portuguese** |
| 23:18,25 24:3 | **padronizados** | **pending** 25:24 | 34:20 |
| 27:15 32:1 | 1:4 3:3 | **people** 16:3 | **possession** 5:1 |
| **obtained** 27:13 | **page** 1:17 23:9 | 19:13 | 5:4 31:13 34:4 |
| 32:16,18 | 23:12 29:25 | **person** 5:9 8:24 | **possibilities** 9:5 |
| **oh** 19:4 31:15 | 34:19 35:21 | 8:25 | **possible** 30:10 |
| **okay** 13:25 | 37:5 | **ph** 25:3 | **potentially** |
| 16:22 18:19 | **pages** 22:12 | **philadelphia** | 12:4 |
| 21:11 22:6,7 | 32:25 | 1:24 | **power** 4:9,16 |
| 22:11 24:14,22 | **panel** 1:13 | **picture** 5:16 | 32:10 |
| 25:14 26:14 | **papers** 11:24 | **place** 18:18,22 | **powers** 26:11 |
| 27:2 29:7,10 | 25:10 31:5 | **plaintiff** 7:10 | **practical** 28:8 |
| 30:17 31:9 | **paragraph** | 7:17 | **precedent** |
| 33:11 35:15 | 17:6 23:12,14 | **plaintiffs** 6:16 | 10:20 33:20 |
| **once** 31:12 | 23:23 35:11 | 7:6 10:13 | **precise** 5:16,17 |
| | | | 35:10 |

precisely 35:2
preliminary
6:12 11:13
34:24
prepare 35:17
pretty 18:17
prima 16:14
problem 12:12
32:4
procedures
10:8
proceeding
4:25 5:8,13,20
6:3,6,11,13,18
6:24 7:15,21
9:3,6,11 11:13
12:21,22 15:2
15:12 20:3
22:15 25:25
26:6 28:15,22
29:14,15 30:8
30:9,11,22
32:7,8,17,17
34:5,25 35:4,7
35:8
proceedings
6:15 19:13
28:23 30:3,14
38:4
processes 24:1
produce 4:9,15
4:17 11:23
13:16 25:1
32:14,19 33:3

produced 6:4
10:2 12:5 27:7
31:4,5 32:11
32:13 33:2
34:7
producing
29:19
production
25:4 26:12
31:21
proffer 18:7
progress 12:8
proof 10:5,18
10:21 21:3,13
21:25 22:1,17
22:21
proper 3:9 6:10
6:10 7:18,25
11:19 32:3
33:3,6
proves 15:22
provide 5:14
13:9
provided 5:15
34:16
provision 28:15
published 12:2
34:2
pull 15:19
punished 9:21
purchased
19:25
pure 10:11
purpose 6:2,4
8:9 13:7 27:11

put 17:15 18:4
19:22 21:25
22:13 23:1,1
28:24

**q**

quasi 9:16
question 6:21
9:1 12:6,24
19:5,24 30:3
questioning
22:8
quintessential
3:8
quote 9:14
11:23
quoting 25:3

**r**

r 2:8 3:1 37:3
38:1
rabbit 35:5
raise 9:1 14:8
ran 13:19
ratification
16:8,9,11
ratified 16:12
reach 11:5
12:13,15 13:1
13:7 23:4,8
24:6,11,19
25:7 27:20,21
read 18:3 22:12
34:17
reading 26:8

ready 6:23
real 15:8
realized 8:10
really 28:20
30:2
reason 23:17
reasonable
15:1,3 17:5
18:25 20:10
reasonably
19:14
reasoned 26:19
reasoning
22:19 23:17
25:21 26:18
rebuttal 3:5
13:24 37:8
receive 29:18
recent 4:1
recently 3:18
receptive 10:2
receptivity
9:25,25 10:14
30:4,13 34:10
recognized
10:10
record 15:22
16:1,2 18:1
35:25 38:4
referenced
22:25
refuse 20:11
regard 14:25
rejected 9:17
18:7 31:19

**related** 7:11
**relevance** 3:25
 5:12
**relied** 6:19
**relief** 27:16
 31:18 32:2
**reply** 24:24
**reporting** 1:23
**request** 10:25
 11:1 32:9 33:2
**requesting** 29:1
**require** 28:7
**requirement**
 5:24 9:16,20
 9:22 11:19
 15:4 28:3,4,13
 30:18 31:23
**requirements**
 8:18 33:23
**requiring** 7:17
**requisites**
 14:14
**reserve** 3:4
**respect** 4:6
 8:24 9:2,8 24:5
**respectfully**
 22:23
**respondent** 1:8
**responses**
 17:14
**restricted** 4:18
**restrictions**
 10:18,21
**restrictive** 3:20

**review** 8:18
 16:17
**rifkind** 2:8
**right** 13:23
 14:16 16:25
 17:18 21:3
 27:8,22 31:7
 31:22 35:12
**rio** 18:19
**route** 35:6
**rule** 13:11
 16:21
**ruled** 4:13,14
 10:15
**ruling** 21:10
**running** 33:12

**s**

**s** 3:1
**sao** 7:9,16
 18:16,17,18
 30:24 34:14
**satisfied** 5:20
 5:23 15:17
 16:15
**saying** 4:1,2
 6:25 8:20,23
 15:25 23:13
 26:9 30:7,10
 32:23
**says** 4:7,8 5:21
 8:22 9:15 12:1
 15:18 17:8,12
 17:17 18:6,18
 18:19 22:5
 23:11,20,23

24:24 25:12
 26:11 28:16,22
 30:1,14 35:11
**scalia** 28:6
**scanlon** 2:3,3
 3:2,7 4:5,22
 5:3 6:1 7:4
 8:14 11:6,11
 11:18 12:18
 13:3,25 31:11
 31:24 32:5
 33:11 34:18
 37:6,8
**seal** 5:13 34:6,6
**sealed** 5:7
**second** 6:8 9:24
 17:20 19:23
 23:6,7 27:9
 29:9,13,21,23
 34:9
**section** 3:8,9,20
 3:24 6:2,5 13:8
 32:23 33:3,6
 33:20
**see** 1:17 14:20
 23:17 28:8
 30:12 34:21
**seek** 6:13 7:25
 28:17 31:17,21
**seeking** 4:25
 5:6,7 9:21 11:4
 15:7 31:25
 33:16,17
**seeks** 4:18

**seems** 12:14
 16:15 28:7
**seen** 22:2
**selective** 11:23
 11:25
**sense** 14:14
**september** 4:20
**set** 3:13,13
**seven** 35:20
**show** 5:9,9
 32:12,12
**showing** 10:1
 16:14 31:4
**shown** 21:18,18
 22:16
**side** 14:6 18:11
 19:21 20:25
 34:20 35:19
**sidebar** 36:1
**sides** 35:15
**simao** 7:8
**similar** 6:3
**simply** 3:21
 4:12,18
**single** 35:21
**sir** 27:25
**situated** 16:6
**situation** 27:4
 28:21
**skip** 14:17
**smitt** 25:3
**soon** 15:18
**sorry** 4:14 19:1
 19:4 20:15

| | | | |
|---|---|---|---|
| **sound** 30:18 | **started** 34:24 | **subpoena** 8:21 | **taxpayer** 7:24 |
| **sounds** 19:8 | **starts** 23:13 | **substance** 17:5 | **tell** 19:16 20:5 |
| **source** 14:22 | 28:15 | 17:14 | **tells** 8:2 28:8 |
| **spaced** 35:21 | **statement** | **substitute** 8:20 | **terms** 25:6 |
| **speak** 25:6 | 25:11 | **success** 19:11 | **test** 27:13 |
| **specific** 8:1 | **statements** | **sufficient** 18:24 | **text** 28:6 |
| 9:14 10:3 34:3 | 12:3 25:8,23 | **suit** 4:4 19:12 | **thank** 31:7,9 |
| **specifically** 5:7 | 34:3 | 19:13 | 35:12,15 |
| 8:17 9:13 10:7 | **states** 1:1,10 | **suite** 1:24 2:5 | **theory** 17:23 |
| 13:5,12,18 | 4:12 6:9 8:11 | **suits** 19:14 | 32:15 |
| **speculative** | 9:10 10:3 | **sul** 34:13 | **thesis** 35:4 |
| 10:11 | 12:20 13:11 | **sum** 17:5,14 | **thing** 9:18,19 |
| **spend** 20:17 | 23:16 27:20 | **supplemental** | 18:18 |
| **spent** 20:16 | 28:16 29:2 | 17:7 35:21 | **things** 22:25 |
| **spreadsheet** | 30:22 32:10 | **supposed** 19:6 | **think** 14:9 15:3 |
| 31:4 32:11,12 | 33:7,15 34:2,2 | 21:17 | 15:4 17:2,13 |
| **spreadsheets** | **stating** 32:25 | **sure** 27:16 | 17:20 18:16,24 |
| 5:14 | **statute** 8:9,23 | **symbol** 33:15 | 20:9,21 21:8,8 |
| **sps** 1:3 3:19 4:7 | 13:8 14:4,15 | **são** 34:13 | 21:14,14 22:3 |
| 4:13,14,18 5:6 | 14:15 15:1 | | 24:5,5,12 25:3 |
| 6:9,11 7:1,5,7 | 18:20 20:11 | **t** | 25:11 28:7,10 |
| 7:14,23 9:21 | 28:9 | **t** 37:3 38:1,1 | 29:22,23,25 |
| 10:13 11:1 | **statutory** 5:19 | **tackle** 14:19 | 30:6,7,19 |
| 16:4 19:25 | 8:18 14:6 21:7 | **tactical** 28:23 | **third** 1:1 25:6 |
| 22:14,14 23:11 | 21:19 33:23 | **take** 30:1 | **three** 35:21 |
| 25:23 27:5 | 35:23 | **taken** 5:10 | **threshold** |
| 31:6 32:9,23 | **stephanos** 1:14 | **talk** 32:21 | 20:21 |
| 33:22,24 34:14 | **strayed** 3:11 | **talked** 14:20 | **threw** 17:19 |
| 34:24 35:3,8 | **street** 1:23 2:4 | **talking** 15:11 | **throw** 34:12 |
| **ss** 7:21 | **striking** 19:24 | 16:10 31:14 | **tie** 21:17 |
| **standard** 3:20 | **submit** 22:24 | 32:20 | **time** 13:19 |
| 24:5 27:13 | 35:21 | **talks** 29:16 | 19:13 20:20 |
| **standing** 7:2 | **submitted** | **target** 8:21 | 27:1,3 33:12 |
| **start** 6:10 7:20 | 35:24 | 9:10 15:8 | **today** 33:16 |
| 30:18 | | **tax** 5:8,11 6:20 | |
| | | 7:18,23 | |

**together** 35:17
**took** 9:21
**traditional** 27:19
**transcript** 35:18 38:3
**translated** 17:16 34:16
**translations** 18:3
**tribunal** 24:24 27:12 30:2
**tribunal's** 11:5
**trigger** 15:19
**true** 10:23 26:15 38:4
**try** 4:4 32:3
**trying** 7:20 32:6
**turns** 12:19
**twice** 11:1 32:9 32:9,18,19 33:1,2
**twin** 13:8
**two** 4:8 7:7 17:16 18:4 22:25 30:10 34:15

**u**

**u** 37:3
**u.s.** 1:11 13:14
**ultimately** 8:8 26:17
**under** 5:7,13 6:23 9:22 10:8

11:19 14:4 20:24 21:5 34:5,6 35:23
**understand** 4:13 8:5 11:3
**underway** 30:4
**undisputed** 23:2
**united** 1:1,10 8:11 9:10 10:2 12:20 13:11 23:15 27:20 28:15 29:2 30:22 33:7,15 34:2
**unobtainable** 23:16 24:16
**unreach** 24:15
**urge** 33:18 34:8
**use** 3:9,20 9:3,5 10:7 14:21 15:12 33:3,6 33:18
**used** 7:22
**uses** 24:7,9
**using** 3:23

**v**

**v** 1:6
**vacated** 3:19
**valid** 19:9,15
**vehicle** 32:3
**veritext** 1:23

**w**

**wait** 4:11 6:2 23:6,6 27:10
**waiting** 16:8
**walk** 20:22
**want** 7:20 8:20 9:6 11:8 12:10 12:16,17 15:2 20:17 27:14 31:3,6 32:2,14 33:13 35:9
**wanted** 14:9 35:1
**wants** 5:21 35:3
**warranting** 21:1 22:10
**washington** 2:5
**way** 5:13 6:10 7:13 8:19 12:3 12:7,11,12 14:20 16:9 22:1 28:9
**we've** 15:18 16:13 20:10
**weigh** 33:24
**weiss** 2:8
**went** 10:23 33:1
**wharton** 2:8
**win** 30:15,15
**wipes** 15:5
**wondering** 22:16

**word** 14:22
**words** 18:21 24:6 30:21
**work** 27:18,24 35:17
**wound** 29:19
**wrong** 18:3 22:18,21

**x**

**x** 37:1

**y**

**yeah** 16:18 29:6 33:9
**year** 31:1
**years** 20:1 33:20
**york** 2:9

DELAWARE RULES OF CIVIL PROCEDURE

Part V. Depositions and Discovery

Title V, Rule 30

(e) Submission to witness; changes; signing. When
the testimony is fully transcribed, the deposition
shall be submitted to the witness for examination
and shall be read to the witness, unless such
examination and reading are waived by the witness
and by the parties. Any changes in form or
substance which the witness desires to make shall
be entered upon the deposition by the officer with
a statement of the reasons given by the witness for
making them. The deposition shall then be signed by
the witness, unless the parties by stipulation
waive the signing or the witness is ill or cannot
be found or refuses to sign. If the deposition is
not signed by the witness within 30 days after the
date when the reporter notifies the witness and
counsel by mail of the availability for examination
by the witness, the officer shall sign it and state
on the record the fact of the waiver or of the
illness or absence of the witness or the fact of
the refusal to sign together with the reason, if
any, given therefor; and the deposition may then be

1    used as fully as though signed, unless on a motion

2    to suppress under Rule 32(d) the Court holds that

3    the reasons given for the refusal to sign require

4    rejection of the deposition in whole or in part.

10   DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES

11   ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

12   THE ABOVE RULES ARE CURRENT AS OF APRIL 1,

13   2019.  PLEASE REFER TO THE APPLICABLE STATE RULES

14   OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.