**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3331
_____

SPS CORP I,
FUNDO DE INVESTIMENTO EM DIREITOS
CREDITORIOS NAO PADRONIZADOS,
                                              Appellant

v.

GENERAL MOTORS CO.
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-21-mc-00565)
District Judge: Honorable Colm F. Connolly
_____

Argued: December 11, 2023

Before: BIBAS, PORTER, and FREEMAN
*Circuit Judges*.

(Filed: July 31, 2024)
_____

Gabriela M.B. Scanlon **[ARGUED]**
MB Scanlon
4301 50th Street NW
1st Floor, Suite 102
Washington, DC 20016

    *Counsel for Plaintiff-Appellant, SPS Corp.*

Amitav Chakraborty
Lewis R. Clayton **[ARGUED]**
Darren W. Johnson
Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019

Daniel A. Mason
Paul Weiss Rifkind Wharton & Garrison
1313 N Market Street
P.O. Box 32, Suite 806
Wilmington, DE 19899

    *Counsel for Defendant-Appellee, General Motors Co.*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

    The Brazilian subsidiary of General Motors ("GM Brazil") sued the Brazilian government to recover tax overpayments paid by Brazilian car dealerships. After securing

the right to recover, GM Brazil filed a claim with Brazil's tax collection agency, the Receita Federal do Brasil ("RFB"), to confirm the precise amount of the overpayments. At the same time, SPS Corp I – Fundo de Investimento em Direitos Creditórios Não Padronizados ("SPS"), the assignee of thirty-five dealerships, commenced an action in Brazil seeking to recover the value of the tax overpayments from GM Brazil. After receiving adverse decisions from Brazilian courts relating to standing and preliminary discovery, SPS filed an application in the District Court for the District of Delaware seeking discovery against General Motors ("GM"). The Court denied SPS's request. Finding no abuse of discretion, we will affirm.

I

The Imposto sobre Produtos Industrializados ("IPI") is a Brazilian tax paid by car manufacturers when they sell vehicles and parts to dealerships. The IPI was originally calculated based on the sticker price of the vehicle or parts sold, irrespective of any discounts given by the manufacturer to the dealer. In 1989, Brazil changed the IPI calculation so that the tax was based on the actual price paid to manufacturers by dealers. This change reduced the tax obligations of manufacturers. From June 1, 1990, to July 31, 1991, GM Brazil continued to pay the IPI based on sticker prices. But it passed the cost of the tax through to dealerships, so ultimately they incurred the higher, sticker-based IPI tax payments.

On behalf of the dealerships, GM Brazil successfully sued the Brazilian government to recover the tax overpayments. Under Brazilian law, to recover after obtaining such a decision, taxpayers must file a proof of claim with the RFB. GM Brazil retained an auditor to prepare a spreadsheet

3

documenting the tax calculations and the reimbursement credit owed to each dealership. GM Brazil's proof of claim triggered a five-year RFB review period to approve and finalize the overpayment calculations. RFB's review is set to expire on July 30, 2024.

SPS's claims[1] against GM Brazil have been stymied by judicial decisions holding that it lacks standing to sue while the RFB review is ongoing. *See* App. 231–35; 244–58 (Brazilian standing decisions). For example, on March 10, 2020, the 1st Civil Court of São Caetano do Sul held:

> [I]t is necessary to wait for the [RFB] to determine the amount to be reimbursed, so that only then may the plaintiffs judicially claim the amount due to them, if the automaker [GM Brazil] does not pass on the credit or if the dealerships disagree with the value offered to them. It is important to emphasize that the plaintiffs have a mere expectation of right as a result of the favorable sentence to the defendant against the National Treasury, and there is no reason to speak, for now, of a jurisdictional provision capable of satisfying it.

App. 234–35. On appeal, the São Paulo court agreed with GM Brazil that SPS's litigation was an attempt to "shortcut" the RFB investigation and held that recovery may not be pursued until the approval process is complete. App. 255.

---

[1] The car dealerships assigned to SPS their rights to collect the tax credits. *See* Poppa Declaration ¶ 4, App. 73.

4

Despite the standing decisions, SPS attempted to pursue discovery in aid of its litigation strategy. Beginning in March 2020, SPS began informally requesting information from GM Brazil "so that SPS [could] assess the scope and timing of any payment obligation that GM Brazil owes to SPS, by virtue of SPS's status as successor to the dealerships' claims." Opening Br. 10–11.

In February 2021, SPS initiated a Preliminary Discovery Proceeding against GM Brazil in a Brazilian court. *See* App. 318–20. The parties' accounts of what happened next differ, but GM Brazil ultimately provided SPS with the spreadsheet submitted to the RFB and filings from GM Brazil's action against the Brazilian government. SPS contends this document production was inadequate.

On December 23, 2021, SPS filed an application under 28 U.S.C. § 1782 with the U.S. District Court for the District of Delaware, seeking authorization to propound discovery on GM and its auditors. The District Court denied the request, holding that the factors provided by the Supreme Court in *Intel* weighed against SPS. *See* App. 9–13; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). In the District Court's view, respect for the São Paulo court and the goal of efficient litigation counseled against allowing § 1782 discovery while SPS's discovery proceedings were pending in São Paulo. App. 11.

Two days after the District Court's decision, the Brazilian court presiding over the Preliminary Discovery Proceeding denied SPS's requests for more documents. App. 319–20. The court criticized SPS for attempting to "transform the nature of the preliminary discovery lawsuit action into . . .

5

an action to compel evidence," and refused to evaluate the "sufficiency" of GM Brazil's document production. *Id.* at 320. Whether further production might be appropriate, the court said, "is a subject to be examined in any main action." *Id.*

SPS then asked the District Court to reconsider its denial of the § 1782 application, arguing that the Brazilian decision constituted "new evidence" supporting its application. App. 306. The District Court denied the motion for reconsideration. App. 14–16. SPS appeals the District Court's denial of its § 1782 application.[2]

II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1782. We have jurisdiction under 28 U.S.C. § 1291.

District Court rulings on § 1782 discovery requests are reviewed for abuse of discretion. *In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011). Review is plenary if the district court "'misinterpreted or misapplied the law,' or . . . 'relied on inappropriate factors in the exercise of its discretion.'" *Id.* (quoting *In re Bayer AG*, 146 F.3d 188, 191 (3d Cir. 1998)).

---

[2] Though SPS initially claimed that it appealed the District Court's denial of its § 1782 application *and* the Court's denial of its motion for reconsideration, it later admitted that "it is true that SPS has not pursued an appeal of the district court's denial of its motion to reconsider." Reply Br. 12. Accordingly, SPS waived any challenge to the Court's denial of its motion for reconsideration.

III

A

28 U.S.C. § 1782 gives federal district courts the discretion to order discovery for foreign litigants, subject to three conditions: (1) the person from whom discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by an "interested person." *See* 28 U.S.C. § 1782(a). Before a court can evaluate the discretionary *Intel* factors, it must ensure that the applicant meets these statutory requirements. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 83–84 (2d Cir. 2004). So we will first address the statutory elements before turning to the discretionary factors.

GM argues that SPS does not satisfy the first two of the § 1782(a) statutory requirements. First, GM contends that it is not the actual person from whom the discovery is sought. That's because SPS acknowledged that GM Brazil holds the requested information, and GM Brazil does not reside and is not found in the District of Delaware.

We disagree. SPS's application seeks discovery from GM, which is found within the District of Delaware. That is all the statute requires. That GM Brazil also possesses the requested information is immaterial for purposes of the first statutory requirement.

Second, GM argues that SPS's § 1782 application should be denied because the requested discovery is not "*for use* in a proceeding in a foreign or international tribunal." *See*

7

§ 1782(a) (emphasis added). Specifically, because the Brazilian proceeding will not commence until completion of the RFB review, any discovery obtained under § 1782 cannot be "for use" in an extant Brazilian tribunal.

This argument is similarly unavailing. To comply with the "for use" requirement, a foreign proceeding related to the § 1782 application must be "within reasonable contemplation." *Intel*, 542 U.S. at 259. "It is not necessary . . . for the . . . proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Id.* (citations and internal quotation marks omitted). "The future proceedings must be more than speculative, however, and a 'district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time.'" *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) (quoting *In re Letter of Request from Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 692 (D.C. Cir. 1989)).

SPS's § 1782 request is "for use" in a reasonably contemplated foreign proceeding. While Brazilian courts have held that SPS lacks standing, those decisions acknowledged that the RFB investigation remains ongoing. SPS suspects that GM Brazil has profited from tax credits related to the overpayments during the pendency of the RFB investigation. This allegation is unproven, but it portends future litigation in Brazil. *See, e.g.*, App. 76–79. SPS's § 1782 application therefore complies with the "for use" statutory requirement.

Finally, SPS meets the "interested person" requirement. SPS would be a litigant in the contemplated merits proceeding,

and litigants are the quintessential interested party. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782." (cleaned up)). So SPS meets all three of the statute's threshold requirements.

We now turn to the *Intel* factors.

B

In *Intel*, the Supreme Court enumerated "factors that bear consideration in ruling on a § 1782(a) request." *Id.* at 264. They are:

1. Whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section § 1782 aid. *Id.*
2. "[T]he nature of the foreign tribunal, the character of the foreign proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.*
3. "[W]hether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 265.
4. Whether the request is "unduly intrusive or burdensome." *Id.*

The first *Intel* factor asks whether the discovery sought is "unobtainable" in the foreign forum because it is outside the

foreign tribunal's jurisdictional reach. *Id.* at 264. But SPS has said that GM Brazil possesses the documents it seeks. App. 29, 74. The discovery sought here is also in Brazil, in the possession of a party subject to the Brazilian courts' jurisdiction, so it is obtainable there without § 1782(a) aid. The only sense in which it is "unobtainable" stems from SPS's repeated litigation defeats, not because of geographic and jurisdictional barriers. App. 231–35; App. 244–58 (Standing Decisions); 318–20 (Preliminary Discovery Proceeding). So *Intel* factor one does not help SPS.

SPS argues that factor-one scrutiny should focus narrowly on whether the party "from whom discovery is sought is a participant in the foreign proceeding." Opening Br. 28 (citing *Intel*, 542 U.S. at 264). But the focus of *Intel*'s first factor is not simply whether the party from whom discovery is sought is a participant in the foreign proceeding. *Intel* articulates factor one as follows:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence . . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264. Accordingly, in *Chevron*, we held that factor one supported granting § 1782 discovery because it would have been "fruitless" for the Ecuadorian court to order production of documents that were outside of Ecuador's jurisdictional reach. *Chevron*, 633 F.3d at 162. Here, by contrast, it is undisputed that the discovery is within Brazilian courts' jurisdictional reach.

SPS says the District Court's analysis of the first *Intel* factor implicitly and improperly imposed an exhaustion requirement. Indeed, we have rejected the argument that an application should be denied because the applicant must exhaust discovery options in the foreign forum before invoking § 1782 in the United States. *See Bayer*, 146 F.3d at 196 (citing *In re Malev v. Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)); *see also John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir. 1985). But the District Court did not impose an exhaustion requirement on SPS. SPS chose to litigate in Brazil, raising the possibility that an adverse decision might be examined by a U.S. District Court adjudicating a parallel § 1782 discovery request. App. 16 ("Having caused two courts to review and rule on its discovery requests, SPS must now live with the consequences of that decision."). The Brazilian court decisions are relevant to the § 1782 analysis, and the District Court did not abuse its discretion by considering them. *Intel*, 542 U.S. at 264.

*Intel*'s second factor asks whether the foreign government, court, or agency is receptive to U.S. federal-court judicial assistance. *Intel*, 542 U.S. at 264. Closely related to this factor is the third *Intel* factor: When evaluating foreign receptivity, the district court may "consider whether the § 1782(a) request conceals an attempt to circumvent foreign

11

proof-gathering restrictions or other policies of a foreign country or the United States." *Id*. at 265.

The District Court concluded that *Intel*'s receptivity factor favored GM because "respect for the São Paulo court and the goal of efficient litigation caution that I should wait until the pending discovery proceeding concludes." App. 11.[3] SPS contends the District Court erred by focusing too narrowly on the Brazilian court adjudicating SPS's request to take preliminary discovery. Instead, SPS argues, the District Court should have focused on the receptivity of the Brazilian legal system *generally* to U.S. federal-court judicial assistance. Opening Br. 29–31.

The District Court did not err by considering the Brazilian court proceedings as part of its receptivity analysis. The Supreme Court articulated the second *Intel* factor in the disjunctive: "a court presented with a § 1782(a) request may take into account . . . the receptivity of the foreign government *or* the court *or* agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264 (emphasis added). So the District Court did not abuse its discretion by evaluating Brazilian courts' receptivity to discovery obtained under § 1782. Given the procedural history of the parties' dispute, it is unclear what other Brazilian tribunal or agency evidence the

---

[3] The District Court initially weighed the second *Intel* factor in favor of GM because of the possibility that the Sao Paulo court might deny the discovery sought by SPS. Within days, that court in fact denied SPS's request to take the essentially same discovery that it sought under § 1782. The District Court then denied SPS's motion for reconsideration. *See* App. 14–16.

District Court should have considered as part of its receptivity analysis, and SPS has not suggested any.[4]

Our caselaw suggests that district courts may consider receptivity generally or specifically. In *Chevron*, our factor-two analysis in part examined "receptivity" narrowly. *See Chevron,* 633 F.3d at 162–63. Because the record was unclear whether the Ecuadorian court had denied the applicant's requests for documents, the party opposing the § 1782 application did not meet its "burden of demonstrating offense to the foreign jurisdiction." *Id*. at 162 (internal quotation marks and citation omitted). Similarly, the party opposing the § 1782 application failed to show that an Ecuadorian arbitration panel would not be receptive to the evidence. *Id*. at 163. We affirmed the district court because the appellant could not demonstrate offense to specific tribunals in the foreign jurisdiction. *Id*.

Our opinion included dicta cautioning that a foreign court's refusal to allow parallel discovery does not necessarily

---

[4] SPS does emphasize that a party opposing § 1782(a) discovery bears the burden of persuading a U.S. District Court that the application would offend the foreign jurisdiction. Indeed, we have said that "[t]he party opposing discovery [under § 1782] has the 'burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application.'" *Chevron,* 633 F.3d at 162 (quoting *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999)). But GM has carried this burden by invoking the Brazilian standing and Preliminary Discovery decisions. *See Chevron*, 633 F.3d at 163 (party opposing § 1782 discovery can show offense to the foreign jurisdiction by adducing foreign court orders denying requests for the same documents).

13

mean that it would reject "relevant evidence tendered to it if procured without its assistance." *Id*. True enough, but that possibility does not mean the District Court abused its discretion by concluding the Brazilian courts are not receptive to extraterritorial discovery from SPS, whose requests for substantially the same discovery they have rejected. *See* App. 319–20. Unlike the party opposing § 1782 discovery in *Chevron*, GM has shown that the Brazilian court presiding over the parties' discovery dispute rebuffed SPS's effort to take the requested discovery. Beyond that, we do not require GM to prove a negative, *i.e.*, that those courts or Brazil's legal system generally would under no circumstances be receptive to the § 1782 discovery sought here.

The District Court's treatment of *Intel*'s second factor (receptivity) dovetailed with its consideration of the third factor (circumvention). It reasoned that if the São Paulo court were to rule in favor of GM Brazil and deny SPS's request to take discovery in Brazil, allowing substantially the same discovery against GM would likely circumvent foreign proof-gathering restrictions because it would undercut the São Paulo court's decision. But because the São Paulo court had not yet ruled at the time of the District Court's August 30, 2022, order, the District Court found the third factor did not weigh in favor of either party. App. 11–12.

Two days later, the São Paulo court denied SPS's preliminary discovery request. App. 318–20. When apprised of that development, the District Court reasonably viewed the third factor differently. Allowing § 1782 discovery at that juncture, it said, would undermine finality, encourage parties to attempt to circumvent adverse foreign rulings, and generate inefficiency. App. 14–16.

SPS acknowledges that the circumvention factor applies "when the foreign tribunal has already rejected requests for the same documents." Opening Br. 34 (quoting *In re Ex Parte Application of Eni S.p.A.*, 2021 WL 1063390 at *4 (D. Del. Mar. 19, 2021)). The São Paulo court's September 1, 2022, ruling satisfied that condition. App. 318–20. Particularly when that decision is viewed in the context of the other Brazilian rulings against SPS, we cannot say that the District Court's cautious response was an abuse of discretion.

Adverse discovery rulings by foreign courts are not necessarily fatal for § 1782 applicants. *See Intel*, 542 U.S. at 253 (holding that § 1782 does not impose a foreign-discoverability requirement). Indeed, sometimes foreign courts signal receptivity to discovery obtained under § 1782. *See, e.g.*, *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010) (nonprecedential) (noting that a German Court postponed German proceedings "specifically for the purpose of permitting [the § 1782 applicant] extra time to pursue its discovery requests in [the United States]"). Here, however, Brazilian courts have thus far erected a solid wall against SPS's attempts to pursue GM Brazil and none have indicated receptivity to American discovery. On this record, the District Court did not abuse its discretion in analyzing the *Intel* discretionary factors.[5]

---

[5] We agree with the District Court that the fourth *Intel* factor favors SPS: its discovery requests are not "unduly intrusive or burdensome." *See* App 12; *Intel,* 542 U.S. at 265. But that consideration is outweighed by factors one through three, all of which favor GM in this case.

* * *

We will affirm the District Court's order denying SPS's motion for reconsideration of the Court's original denial of the § 1782 application.